QUINN EMANUEL URQUHART & SULLIVAN, LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Ray R. Zado (Bar No. 208501)
rayzado@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Plaintiff BLACKBERRY LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BLACKBERRY LIMITED, a Canadian corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TYPO PRODUCTS LLC, a Nevada limited liability company,<br><br>                    Defendant. | Case No. 3:14-cv-00023-WHO<br><br>**BLACKBERRY LIMITED'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:      March 19, 2014<br>Time:      2:00 p.m.<br>Place:     Courtroom 2, 17th Floor<br>Judge:    Hon. William H. Orrick, III |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................................... 1

II.    TYPO RAISES NO SUBSTANTIAL ISSUE OF INVALIDITY OF THE '964 PATENT ........... 1

       A.     The '964 Patent Is Not Obvious ............................................................................ 2

       B.     The '964 Patent is Not Invalid Under 35 U.S.C. § 112 ........................................ 5

III.   THE ACCUSED TYPO KEYBOARD INFRINGES THE '964 PATENT .................................. 6

       A.     Typo's Proposed Constructions Are Incorrect ...................................................... 7

       B.     Even Under Typo's Proposed Constructions, the Typo Keyboard Infringes ........ 8

IV.    TYPO RAISES NO SUBSTANTIAL ISSUE OF INVALIDITY OF THE D'775 PATENT ......... 8

       A.     The D'775 Patent Is Not Anticipated .................................................................... 8

       B.     The D'775 Is Not Obvious .................................................................................... 9

V.     THE ACCUSED TYPO KEYBOARD INFRINGES THE D'775 PATENT ............................. 11

       A.     Typo's Proposed Verbal Claim Construction is Improper .................................. 11

       B.     No Elements of the D'775 Patent Are Dictated by Function ............................... 11

       C.     BlackBerry Has Proven Infringement of the D'775 Patent ................................ 12

VI.    AN IMMEDIATE INJUNCTION IS NEEDED TO PREVENT IRREPARABLE HARM .......... 13

       A.     Typo Failed to Rebut BlackBerry's Evidence Of Irreparable Harm ................... 13

       B.     The Balance of Equities Favors BlackBerry ....................................................... 15

       C.     A Preliminary Injunction Serves the Public Interest .......................................... 15

VII.   CONCLUSION ............................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4 | *Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
   678 F.3d 1314 (Fed. Cir. 2012) ............................................................................................... 10

5 | *Apple, Inc. v. Samsung Electronics Co., Ltd.,*
   No. 11-CV-01846-LHK ............................................................................................................ 1

6

7 | *Best Lock Corp. v. Ilco Unican Corp.,*
   94 F.3d 1563 (Fed. Cir. 1996) ............................................................................................... 12

8 | *Bose Corp. v. JBL, Inc.,*
   274 F.3d 1354 (Fed. Cir 2001) ................................................................................................ 6

9

10 | *Braun Inc. v. Dynamics Corp. Of Am.*
    975 F.2d 815 (Fed. Cir. 1992) ............................................................................................... 13

11 | *Cadence Design Sys., Inc. v. Avant Corp.,*
    125 F.3d 824 (9th Cir. 1997) ................................................................................................. 15

12

13 | *Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.,*
    134 F.3d 1085 (Fed. Cir. 2001) ............................................................................................... 1

14 | *Clamp-Swing Pricing Co. v. Super Market Merchandising and Supply, Inc.,*
    No. 13-cv-04515-WHO, 2013 WL 6199155 (N.D. Cal. Nov. 21, 2013) ........................... 14

15

16 | *Contessa Food Prods., Inc. v. Conagra,*
    282 F.3d 1370 (Fed. Cir. at 2012) .................................................................................... 10, 12

17 | *Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ................................................................................................................. 1

18

19 | *Durling v. Spectrum Furniture Co., Inc.,*
    101 F.3d 100 (Fed. Cir. 1996) .............................................................................................. 9, 10

20 | *eBay, Inc. v. Bidder's Edge, Inc.,*
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................................ 15

21

22 | *Egyptian Goddess, Inc. v. Swisa, Inc.,*
    543 F.3d 665 (Fed. Cir. 2008) .......................................................................................... 11, 12

23 | *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.,*
    275 F. Supp. 2d 850 (E.D. Mich. 2003) ............................................................................... 13

24

25 | *Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.,*
    471 F.3d 1369 (Fed. Cir. 2006) ........................................................................................... 2, 3

26 | *Energizer Holdings Inc. v. Int'l Trade Comm'n,*
    435 F.3d 1366 (Fed. Cir. 2006) ............................................................................................... 6

27

28 | *Graham v. John Deere Co.,*
    383 U.S. 1 (1966) ..................................................................................................................... 5

ii

Case No. 3:14-cv-00023-WHO

BLACKBERRY LIMITED'S REPLY ISO MOTION FOR A PRELIMINARY INJUNCTION

*In re Harvey*,
    12 F.3d 1061 (Fed. Cir. 1993)...................................................................................9

*Int'l Seaway Trading Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009).............................................................................9, 10

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007).............................................................................................2, 3, 4

*L.A. Gear v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993).............................................................................11, 12

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011).........................................................................................2, 9

*Multiform Dessicants, Inc. v. Medzan, Ltd.*,
    133 F.3d 1473 (Fed. Cir. 1998)...............................................................................7

*Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    739 F.3d 694 (Fed. Cir. Jan. 8, 2014) ....................................................................11

*Power-one, Inc. v. Artesyn Techs., Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010)...............................................................................10

*QBAS Co., Ltd. v. C Walters Intercoastal Corp., No. SACV 10-406*,
    2010 WL 7785955 (C.D. Cal. Dec. 16, 2010) ........................................................2

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010)...............................................................................12

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000).................................................................................2

*Saffron v. Johnson & Johnson*,
    712 F.3d 549 (Fed. Cir. 2013).................................................................................7

*Scholle Corp. v. Blackhawk Molding Co., Inc.*,
    133 F.3d 1469 (Fed. Cir. 1998)...............................................................................13

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1375 (Fed. Cir. 2011)...............................................................................2

*Sun Hill Indus. Inc., v. Easter Unlimited, Inc.*,
    48 F.3d 1193 (Fed. Cir. 1995).................................................................................12

*Superguide Corp. v. DirecTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004).................................................................................7

*Vas-Cath, Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991)...............................................................................6

*Windsurfing Int'l Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986).................................................................................15

**Statutes**

35 U.S.C. 102(a)(1)...................................................................................................... 10

35 U.S.C. § 112 ............................................................................................................... 5

Fed. R. Evid. 401, 402, 403, 702 ................................................................................... 1

# I.    INTRODUCTION[1]

Typo's Opposition ignores two critical underpinnings of BlackBerry's motion that compel a preliminary injunction: (1) Typo's knock-off keyboard intentionally copies critical technical and ornamental design elements disclosed in BlackBerry's '964 and D'775 patents; and (2) Typo's core business model is based on converting BlackBerry users by transplanting BlackBerry's iconic keyboard onto the iPhone.   Unable to address BlackBerry's clear factual and legal showing of likelihood of success, Typo completely fails to meet its burden.   Typo could not raise any substantial issue with regard to validity of BlackBerry's patents because it did not satisfy obviousness and anticipation standards it recites, nor could it rebut BlackBerry's strong secondary indicia of non-obviousness.   Typo's non-infringement positions misconstrue the asserted claims and conducting inappropriate infringement analyses.   Finally, BlackBerry's most powerful evidence of Typo's irreparable harm to BlackBerry's customer relationships and goodwill stands unrefuted.   This Court should issue a preliminary injunction immediately to prevent further injury to BlackBerry from Typo's blatant theft of BlackBerry's patented keyboard technology and design.

# II.    TYPO RAISES NO SUBSTANTIAL ISSUE OF INVALIDITY OF THE '964 PATENT

To defeat this motion, Typo must prove it is likely to prevail when the evidence is "view[ed] . . . in light of the burdens and presumptions that will inhere at trial," including the presumption of validity and clear and convincing evidence standard.   *Canon Computer Sys., Inc. v. Nu-Kote Int'l., Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 2001) (without "persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue").   Typo failed to identify any persuasive evidence of invalidity, much less clear and convincing evidence.   Typo concedes the '964 patent is novel by not naming a single anticipatory reference.   Its only arguments—obviousness and indefiniteness—fall short.

---

[1]    Typo founder Laurence Hallier's declaration is rife with arguments and opinions even though he is neither qualified nor offered as an expert witness.   Mr. Hallier says he is a "serial entrepreneur" with advertising experience, but he has no legal or technical training.   Hallier Dec. ("Hallier"), Dkt. 25-22.   Thus, the Court should strike ¶¶10, 13-29, 37-38, 40-41, & 44-53.   *See* Fed. R. Evid. 401, 402, 403, 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).   Typo also circumvented the Court's page limits by jamming his declaration with these improper arguments, as well as assertions and exhibits not relied upon in its brief.   On this basis, the Court should strike ¶¶1-5, 9-29, 37-42, 44-43; & Exs. 13-17.   *See, e.g.*, *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, Dkt. 2212 (N.D. Cal. Jan. 2, 2013) (striking arguments in declarations but not articulated within the briefing page limits).

A.      The '964 Patent Is Not Obvious

To prevail on obviousness, Typo must prove that "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007).  This burden is heavier because Typo cites art considered during prosecution.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2251 (2011).  In an obviousness determination, one must consider "(1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention at the time of invention, (3) the level of ordinary skill in the art, and (4) the objective indicia of nonobviousness."  *Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1377 (Fed. Cir. 2006).  The scope is not just any art, but art that is "reasonably pertinent to the particular problem with which the invention was involved."  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664 (Fed. Cir. 2000).  Obviousness requires an "explicit" rationale as to why one of ordinary skill in the art would have "combine[d] the known elements in the fashion claimed by the patent at issue."  *KSR*, 550 U.S. at 418-19.  Using hindsight in the obviousness analysis is forbidden.  *Id.* at 421.  Importantly, secondary considerations may often be the most "probative and cogent evidence [of nonobviousness] in the record."  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1375, 1364 (Fed. Cir. 2011) (citations omitted).

**Typo's Arguments Ignore the Problem Addressed by the Invention.**  The new prior art on which Typo relies (Opp. at 3-5) was not pertinent to the problem faced by the inventors of the '964 patent, and thus, not surprisingly, was not raised during prosecution.[2]  To the extent those devices are pertinent, they are cumulative of art considered during prosecution.   Rempel Reply Dec. ("Rempel") ¶¶99-119.

The '964 patent is directed to handheld devices for electronic communication.  The specification explains that "[i]n order to keep the form factor of the two-way pager small enough to be worn on the body of the user . . . the input device needs to be small, have a minimal number of keys and optimized for use with a minimal number of key strokes."  Dkt. 1-1 at Col. 1:30-37.  To solve this problem, the '964

---

[2]    Typo's assertion that BlackBerry "completely ignore[d] the prior art" in its opening brief (Opp. at 6) disregards the legal standard and practice in preliminary injunction in a patent case.   It is the ***accused infringer's*** obligation to identify prior art in its opposition to a motion for preliminary injunction (to the extent relevant), to which the patentee responds in its reply.  *See QBAS Co., Ltd. v. C Walters Intercoastal Corp.*, No. SACV 10-406, 2010 WL 7785955 at *3-4 (C.D. Cal. Dec. 16, 2010).

710.00002/5751203.8

patent is "directed to an input device that is oriented to be used **substantially through use of the thumbs** . . . by providing a keyboard with a **minimal number of keys [that] are placed** . . . **to maximize the surface area of the thumb hitting the key** and to provide the user with a comfortable position of the hands for data input." *Id.* at Col. 1:44-65 (emphasis added). This orientation "encourages input by the thumbs, which the inventors of the instant invention have discovered to be faster and more accurate in small hand-held electronic devices than touch-typing or 'hunting and pecking' typing." *Id.*

The pertinent art here is small handheld communication devices (Rempel ¶¶26-35, 102-118) and not, as Typo contends, all QWERTY keyboards, mechanical typewriter keyboards, and the Smith Corona Spell Mate and Spell Right devices relied on by Typo. *See* Opp. at 4-5; Rempel ¶¶102-118. These larger form factor devices were not used for electronic communication, nor were they intended for use with small handheld electronic devices designed to be carried at all times. *See* Curley Dec. ("Curley"), Dkt. 25-1 ¶¶22-38; Rempel ¶¶102-118. Thus, Typo's prior art is not pertinent to an obviousness analysis. Rempel ¶118.

**Typo Fails to Identify the Level of Ordinary Skill in the Art or Any Reason to Combine.**
Typo never identifies the relevant art to which the '964 patent pertains, much less the level of ordinary skill in the art; yet both are necessary to prove obviousness, regardless of the burden of proof applied. *See Eli Lilly*, 471 F.3d at 1377. Critically, Typo provides no rationale as to why one of ordinary skill in the art would have combined the elements of **any** of the prior art it identifies. Rather, Typo only makes conclusory assertions about the art and its combinations. *See, e.g.*, Opp. at 5. This analysis is deficient as a matter of law, which requires an "explicit" statement of why one of ordinary skill in the art would have combined the references. *See KSR*, 550 U.S. at 418-19. Typo has presented no evidence suggesting that a skilled artisan would have solved the problem of facilitating thumb typing in a handheld communication device in the manner the '964 patent did. Rempel ¶¶120-165.

On the contrary, one of ordinary skill in the art would not have been motivated to combine the references identified by Typo to arrive at the claimed invention. *Id.* With respect to the proposed combination of the Spell Right or Spell Mate devices and either Siitonen (or a traditional QWERTY keyboard), neither the Spell Right or Spell Mate are mobile communication devices, and they were not limited in surface space in the same way as the devices that are the subject of the '964 patent. *Id.* at

¶¶147-151. The Spell Right and Spell Mate were also not intended for communicating in sentences, but were instead designed for typing individual words or equations on a larger form factor device (*e.g.*, 5" x 7" or larger). *Id.* One would not combine the Spell Right or Spell Mate, which have additional directional keys for navigating the user interface, with Siitonen or a traditional QWERTY keyboard because the combination would require drastic changes affecting functionality.  *Id.* at ¶¶152-57. For example, replacing the bottom row of keys on the Spell Right or Spell Mate with that of Sittonen would require moving some of the directional keys, thus separating the up/down and left/right arrows.  *Id.* at ¶¶152-55. Moreover, combining devices with relatively large form factors (electronic dictionary or thesaurus) and smaller form factors (Siitonen smartphone) would not yield predictable results because their different uses and purposes dictate different ergonomic functions and designs. *Id.* at ¶157. Only improper hindsight knowledge serves to guide Typo in making these combinations. *See KSR*, 550 U.S. at 421.

**<u>Typo Fails To Identify All of the Claim Elements In The Art.</u>**  Typo argues that the combinations it proposes would meet all of the elements of the asserted claims. Opp. at 5-6. But Typo's flawed analysis is merely conclusory, and improperly focuses on what it calls the "essence of claim 19." Opp. at 6. Typo does not even include a mapping of claim elements to the art. *Id.* at 5-6.  Moreover, Typo ignores certain key limitations altogether. The lowest rows of the Siitonen keyboard and a traditional QWERTY keyboard both include keys that are horizontally offset from other keys above. Rempel ¶156. And neither the Siitonen keyboard nor the Smith-Corona devices include letter keys that are adjacent to the right and left edges of the device as required by the claims. *Id.* at ¶¶128-137. As a result, the proposed combinations would result in (1) a lower row of offset keys that are not "substantially vertically aligned" with those in the rows above; (2) with keys in the upper, middle, and lower rows that are not "bisected by a vertical reference substantially midway between the left edge and the right edge"; and (3) with keys in rows that are not "adjacent" to the left and right edges. *Id.* at ¶156. These are all requirements of the asserted claims, and each is missing from Typo's prior art combinations.

**<u>Typo Fails to Rebut the Strong Objective Evidence of Non-Obviousness.</u>**  BlackBerry has identified convincing evidence of five factors of secondary indicia of non-obviousness.  Mot. at 18-19. Tellingly, Typo does not contest at least three of these factors—namely, industry acceptance, long-felt but unresolved need and Typo's own transparent effort to copy the BlackBerry keyboard design, which

1   embodies the '964 patent.  *Id.* at 19.   Typo's arguments on secondary indicia bear no relationship to the

2   factors in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).   First, Typo claims that the "commercial

3   success" and "praise by others" Blackberry has achieved is "not over the Rim 850/950 Wireless

4   Handheld Device." Opp. at 7.   Not only is this incorrect factually (Rempel ¶164; Rempel Opening Dec.,

5   Dkt. 11-7 ¶122), but the commercial success of, and praise by others for, subsequent BlackBerry devices

6   (such as the Bold) is directly relevant and connected to the '964 patent because those subsequent

7   BlackBerry products practice the '964 patent.   *See* Rempel Opening Dec. ¶¶103-15.

8        Furthermore, Typo's unsupported assertion that "no one in the industry pays any mind to the '964

9   patent when designing keyboards for cell phones" is speculative and irrelevant.  Opp. at 7.  To the

10  extent Typo claims numerous manufacturers also practice the '964 patent, this argument is not only

11  conclusory and entitled to little weight, but if true is also evidence of copying by others, which further

12  supports non-obviousness.   *See Graham*, 383 U.S. at 17-18;[3] Mot. at 18.

13       **B.     The '964 Patent is Not Invalid Under 35 U.S.C. § 112**

14       In arguing invalidity under section 112, Typo ignores the clear disclosure of the drawings and the

15  plain claim language.   First, Typo incorrectly argues that the '964 patent lacks sufficient written

16  description for a "device housing . . . being bisected by a vertical reference substantially midway between

17  the left edge and the right edge."   Opp. at 8.   This phrase, which was added during prosecution, did not

18  come "out of left field" as Typo suggests (*id.*); there is ample support in the patent drawings for this

19  phrase.   Rempel ¶¶166-171.   From this premise, Typo incorrectly argues that there is no "discussion or

20  support for how elements are positioned relative to the edges of the housing."  Opp. at 9.  Typo,

21  however, ignores its own cited case law, which holds that drawings alone can provide the written

22  description of the invention, because the figures show an embodiment that clearly discloses a "device

23  housing . . . being bisected by a vertical reference substantially midway between the left edge and the

24  right edge."   Rempel ¶168; *see Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991).[4]

25  _____

26       [3]     The Motorola litigation involved three patent applications that are related to the '964 patent by
    family and have the same disclosure as the '964 patent.   The prior art identified in the Motorola litigation

27  and provided to the PTO during prosecution of this family of patents relates to handheld communication
    devices and is thus far more pertinent to the '964 inventions than the art now cited by Typo.

28       [4]  The other law cited by Typo (Opp. at 8-9) simply recites the general standards for written
    description, but is otherwise inapposite and distinguishable.   Typo has made no attempt to identify

1    Figure 2, for example, inherently discloses the vertical reference midway between the left and right edges.

2    *Cf. Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir 2001) (recitation of "an ellipse" provided

3    antecedent basis for "an ellipse having a major diameter" because "[t]here can be no dispute that

4    mathematically an inherent characteristic of an ellipse is a major diameter").   The keys are arranged in

5    such a way to disclose to one of ordinary skill a virtual (if not actual) vertical reference, that is expressly

6    shown in Figure 3.   Rempel ¶¶169-170.   The specification provides adequate written description for the

7    claims, and even if it did not, the drawings do.[5]

8            Typo's argument that the asserted claims allegedly lack an antecedent basis for the term "vertical

9    reference line" (Opp. at 10-11) is also specious.   If the scope of a claim is reasonably ascertainable by

10   those skilled in the art, then the claim is not indefinite.   *See Energizer Holdings Inc. v. Int'l Trade*

11   *Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (noting "anode gel" provided antecedent basis for

12   "zinc anode").   The term "a vertical reference" is used in the preamble.   Typo's only argument is that

13   the term "vertical reference line" in the last limitation could mean "something else," without articulating

14   what else it could mean.   Opp. at 11.   Here, one of ordinary skill reading claim 19 would understand

15   that the term "vertical reference line" refers to the same vertical reference in the preamble and is the same

16   as the "vertical reference" used throughout the claim to describe the arrangement of keys in the upper,

17   middle and lower rows.   Rempel ¶¶172-180.   There is no ambiguity here, much less any ambiguity that

18   would prevent one of ordinary skill from ascertaining the claim's scope.

19   **III.    THE ACCUSED TYPO KEYBOARD INFRINGES THE '964 PATENT**

20           Typo argues that only two claim terms—"device" and "bisected by a vertical reference"—require

21   the Court's construction.   In doing so, Typo concedes that the remainder of the claim terms do not need

22   construction.   Opp. at 11-17.   These two terms singled out by Typo are easily understood and do not

23   require construction.   Typo's reliance on *Multiform Dessicants, Inc. v. Medzan, Ltd.*, 133 F.3d 1473,

24   1476 (Fed. Cir. 1998) and *Saffron v. Johnson & Johnson*, 712 F.3d 549, 558-61 (Fed. Cir. 2013) to

25   support its position is misplaced.   In *Multiform*, the Court merely noted that "technical terms" or "words

26

     similarities between the outcomes of those cases and the facts here because there are none.

27   [5]    Typo argues that the asserted claims do not benefit from priority to 1998 because of the alleged
28   inadequate written description.   Because the written description is adequate, Typo's argument fails.
     Rempel ¶¶166-171.

1   of art or special usages" can be construed as part of claim construction.   133 F.3d at 1476.   In *Saffron*,

2   the Court construed the term "device" based on a specific "prosecution disclaimer" that constituted "an

3   affirmative definition for the disputed term."   712 F.3d at 559.   No special definition or prosecution

4   disclaimer exists here.

5           **A.      Typo's Proposed Constructions Are Incorrect**

6           Typo's construction of "device" to mean "messaging device" (Opp. at 13) is unnecessary, and

7   unsupported by the language of the '964 patent claims.   Claim 19 claims "[a] keyboard ***for use with*** a

8   mobile communication device, the keyboard configured in a device housing...."[6]   The keyboard ***itself***

9   need not be in a mobile communication (or messaging) device housing.   Moreover, when Typo's

10  proposed construction is used, it introduces a redundancy the patentee clearly did not intend.   Indeed,

11  the '964 patent already claims (in, *e.g.*, Claims 1-4) a "messaging device," indicating that the patentee

12  specifically chose not to use the term in claim 19.   Rempel ¶¶36-67.   Typo's attempt to read the

13  limitation "messaging" into the term "device" from the specification is improper.   *See Supperguide Corp.*

14  *v. DirecTV Enters., Inc*., 358 F.3d 870, 875 (Fed. Cir. 2004).

15          Typo construes "bisected by a vertical reference" to mean "a distinct physical vertical aspect that

16  physically divides approximately half of the keys positioned to the left and approximately half the keys

17  positioned to the right."   Opp. at 13.   This fares no better because it imports limitations (*e.g.*, "distinct,"

18  "physical," and "physically divides") unsupported by any intrinsic or extrinsic evidence.   *Supperguide,*

19  358 F.3d at 875.   Typo's expert in fact concedes that a reference is "merely a descriptive construct for a

20  location," and it is "***not any actual physical aspect of the device***."   Wobbrock Dec. ("Wobbrock"), Dkt.

21  25-13  ¶35 (emphasis added).   The evidence cited by Typo (Opp. at 13-14) never uses the term

22  "physical" or "physically," much less discloses or requires a ***physical*** line that serves as a vertical

23  reference.   Rempel ¶¶68-88.   As noted above, Figures 2 and 3 support a virtual reference line used to

24  show the relative placement of the keys.   *See* Figs. 2-3; Col. 4:63-64.   Nothing in those Figures requires

25  a "physical aspect"—whatever that may mean—for a vertical reference.   Indeed, during prosecution the

26  Applicants themselves added "a vertical line" down the center of the Sittonen device to show this vertical

---

27      [6]     Typo repeatedly misstates the claim language.   Opp. at 11, 15, 16.   The claims merely require a
28  keyboard "***for use with*** a mobile communication device," not the device itself.   It is undisputed that
    Typo's keyboard is sold for use with a mobile communication device—the Apple iPhone.

1  reference.  Rempel ¶¶82-83.

2      Accordingly, one of ordinary skill in the art would understand that the term "vertical reference" in

3  claim 19 simply refers to a reference (whether virtual or real) used to describe in the claim where keys

4  should be placed on the housing's top surface.  *Id.* at ¶87.  The rest of the claim makes clear that this

5  particular "reference" is substantially midway between the left and right edges of the housing.  *Id.* at

6  ¶¶68-88.  Typo's construction should therefore be rejected.

7      **B.    Even Under Typo's Proposed Constructions, the Typo Keyboard Infringes**

8      The Typo product includes a "keyboard for use with a mobile communication messaging device."

9  Indeed, it is a case sold for use as a device housing for a messaging device—the Apple iPhone.  Rempel

10 ¶¶89-92.  The Typo keyboard product is configured in a device housing that is bisected by "a distinct

11 physical vertical aspect that physically divides approximately half of the keys positioned to the left and

12 approximately half the keys positioned to the right."   Under Typo's flawed interpretation, the "vertical



13 reference" is met by the physical line created by the

14 separation between keys at the center of the Typo

15 Keyboard, and it infringes.  *Id.* at ¶¶93-98.

16 **IV.   TYPO RAISES NO SUBSTANTIAL ISSUE OF INVALIDITY OF THE D'775 PATENT**

17     Typo has failed to analyze anticipation and obviousness of the D'775 design patent properly, let

18 alone raise a substantial issue as to invalidity under the standards cited by Typo and discussed above.

19 The D'775 patent must be presumed valid for purposes of this motion.

20     **A.    The D'775 Patent Is Not Anticipated**

21     Typo makes a short, conclusory argument that the D'775 patent is anticipated but offers no

22 admissible evidence of anticipation consistent with the applicable standard.   Typo acknowledges that the

23 same ordinary observer test for design infringement applies to anticipation, meaning that a design patent

24 is not anticipated unless it is substantially similar to a single prior art reference, "such as to deceive [an

25 ordinary observer], inducing him to purchase one supposing it to be the other."  Opp. at 17-18 (citing

26 *Int'l Seaway Trading Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009)).   Claiming the D'775 is

27 anticipated by "numerous prior art designs," Typo names just one, the "BlackBerry Bold design."  Opp.

28 at 17.  Even then, neither Typo nor its expert attempts to establish an ordinary observer would believe

1   the BlackBerry Bold design was the same as the D'775 design, but instead merely concluded that "the
2   D'775 patent (or the Q10) resembles the BlackBerry Bold far more than it resembles the Typo
3   Keyboard . . . [and] is accordingly anticipated."   Opp. at 18; Wobbrock ¶51; Lucente Reply Dec.
4   ("Lucente") ¶¶6, 13, 25).

5           Significantly, when the PTO examined the D'775 application, it considered United States Patent
6   D'565,578, which is the design for the BlackBerry Bold cited by Typo, and the D'775 patent **issued over**
7   **D'578 without amendment**.   Examiner's Comment attached to the Notice of Allowability, Dkt. 25-59
8   at 6, 25-60 at 1; Lucente ¶28.   The clear and convincing standard is even more difficult to meet if the
9   asserted prior art was examined by the PTO and the patent issued over that art.   *Microsoft*, 131 S.Ct. at
10  2249-51.   Even aside from these fatal legal problems, there is no good faith argument that an ordinary
11  observer familiar with the prior art would be deceived into thinking the D'775 patent is the *same* design
12  as the D'578 patent or the BlackBerry Bold device.   *Int'l Seaway*, 589 F.3d at 1240-41.   A simple visual
13  comparison of the three designs confirms that they are not deceptively similar.   Lucente ¶28.   Thus,
14  Typo failed to meet its heavy burden to provide clear and convincing evidence of anticipation.

15  ### B.        The D'775 Is Not Obvious

16          To establish obviousness for a design patent, an infringer must identify specific pieces of prior art
17  that when combined can create a single anticipating reference, and must show that it would have been
18  obvious to a designer skilled in the art to make this combination or modification.   The first step is to
19  identify a single prior art reference that can serve as a primary reference in the eyes of a person of
20  ordinary skill in the art.   *Int'l Seaway*, 589 F.3d at 1240.   To serve as a primary obviousness reference,
21  the design characteristics of the prior art must be "*basically the same* as the claimed design."   *Durling v.*
22  *Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (emphasis added); *see In re Harvey*, 12
23  F.3d 1061, 1063 (Fed. Cir. 1993) (where major modifications would be required, the prior reference
24  "cannot qualify as a basic design").   If a primary reference is identified, "secondary references may only
25  be used to modify the primary reference if they are so related [to the primary reference] that the
26  appearance of certain ornamental features in one would suggest the application of those features to the
27  other."   *Durling*, 101 F.3d at 103 (quotation omitted).   "Once that piece of prior art has been constructed,
28  obviousness, like anticipation, requires application of the ordinary observer test."   *Int'l Seaway*, 589 F.3d

at 1240-1241.

Typo's Opposition simply does not contain an obviousness analysis.   Opp. at 17-18; Lucente ¶¶6, 12, 14-20.   Typo offered no evidence whatsoever that any of the vaguely referenced devices it calls "prior art" were "in public use, on sale, or otherwise available to the public" before the D'775 priority date as required by 35 USC 102(a)(1).   Typo and its purported expert fail to identify or analyze any prior art as a primary or secondary reference, and further fails to indicate how any prior art references would be combined to be deceptively similar to the D'775 patent.   .Opp. at 17-18; Wobbrock ¶¶50-51. Although his Exhibit 2 is a "set of photos for some of the phones" that he reviewed, Mr. Wobbrock does not articulate what references he believes are prior art.   Wobbrock ¶¶50-51.[7]   Indeed, Mr. Wobbrock fails even to include, let alone analyze, any views of the supposed prior art other than the front view, in direct violation of Federal Circuit law requiring that all views be considered.   *Contessa,* 282 F.3d at 1381-1382; *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1326 (Fed. Cir. 2012) (holding it was erroneous for district court to refuse to consider all views of prior art).   Typo's Opposition fails to provide the requisite explanation why a designer skilled in the art would consider it obvious to combine any references, and fails to apply the ordinary observer standard against any combination at all.   Opp. at 17-18; Wobbrock at ¶¶50-51; Lucente ¶6, 12, 14-23.

Typo tries to distract from a lack of evidence of obviousness by misleadingly suggesting that the D'775 patent is invalid because BlackBerry uses legacy design elements.   Opp. at 18.   Even if all the various individual design elements of the D'775 were shown to be in the prior art and BlackBerry's prior designs -- which they are not -- this alone cannot establish invalidity.   Novel designs can be created using elements already known in the art.   *Power-one, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343 (Fed. Cir. 2010) ("a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art") (internal quotation and citation omitted).

Finally, Typo's Opposition does not address any of the secondary indicia of nonobviousness identified in BlackBerry's Motion.   Mot. at 13-14.   Typo's Opposition does not dispute that the Typo Keyboard is an intentional copy of the D'775 and the BlackBerry Q10, or that the BlackBerry Q10

---

[7]   Typo also relies on Mr. Hallier's declaration to argue that the D'775 patent is "far from new or original."   Opp. at 18.   As discussed above, Mr. Hallier is an investor with an advertising background and no technical expertise, so his purported opinions on validity should be excluded or disregarded.

1  keyboard has received significant industry praise.  These secondary indicia confirm that the D'775

2  patented design is not obvious.  Lucente Opening Dec., Dkt. 12-5 ¶¶ 68-70; Lucente ¶29.  In short,

3  Typo utterly failed to meet its obligation to put forth persuasive evidence that the D'775 patent is obvious.

4  *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

5  **V.      THE ACCUSED TYPO KEYBOARD INFRINGES THE D'775 PATENT**

6           **A.      Typo's Proposed Verbal Claim Construction is Improper**

7           A court generally should not attempt to construe a design patent claim by providing a "detailed

8  verbal description" because a design "is better represented by an illustration 'than it could be by any

9  description.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).  Typo both

10 seeks a verbal construction and attempts to impose improper "prosecution history…limitations" on the

11 D'775 patent.  Opp. at 19-20.  Prosecution history estoppel cannot apply because BlackBerry did not

12 surrender any part of its claim as a condition for securing the patent. *See Pacific Coast Marine*

13 *Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 701-702, (Fed. Cir. Jan. 8, 2014). The patent

14 examiner identified a partial list of novel design elements, and issued D'775 over the cited prior art as

15 claimed, without modification or amendment.   D'775 File Wrapper, Dkts. 25-59 at 6, 25-60 at 1.   The

16 Typo Keyboard should therefore be compared to the D'775 patent images themselves, without a verbal

17 claim construction, using the proper ordinary observer analysis. *Egyptian Goddess*, 543 F.3d at 676-77.

18          **B.      No Elements of the D'775 Patent Are Dictated by Function**

19          Although Typo alleges that the "shape, angle and position of the keys and the frets" in the D'775

20 design are functional, (Opp. at 20-21), Mr. Wobbrock only claimed the frets and the "sculpted keys" are

21 functional because they can improve thumb typing.   Wobbrock ¶¶58-69.   Design patents protect the

22 ornamental design of articles of manufacture, so it is fundamental that a design or individual element

23 cannot be found to be "functional" simply because it serves a functional purpose.   *L.A. Gear*, 988 F.2d at

24 1123.   Instead, the Court may only factor out elements whose designs are "dictated by their functional

25 purpose," *see, e.g., Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010), which was

26 Typo's burden to prove.   *See L.A. Gear*, 988 F.2d at 1123. Typo does not mention, let alone attempt to

27 meet, the standard for proving functionality.   Opp. at 20-21.   Typo merely states the obvious fact that

28 the D'775 patent claims the ornamental design of a keyboard – a functional object – and argues that "in

1    its own advertising, BlackBerry touts the functionality of its keyboard." *Id*.   Despite Typo's attempt to

2    skirt the governing law, the D'775 design elements are not functional just because they are "useful,"

3    particularly in light of the evidence BlackBerry propounded that the keys and frets of its keyboards are

4    designed to have a unique aesthetic appearance.   Mot. at 4, 11; Lucente ¶¶30-35; Hofer ¶¶7, 11-12.

5    Furthermore, Typo's own identification of numerous alternative designs and other admissions serve to

6    prove that no elements of the D'775 patent are "dictated by function."   Lucente ¶¶34-36; *see Best Lock*

7    *Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("A design is not dictated solely by its

8    function when alternative designs for the article of manufacture are available.")   Typo's conclusory

9    assertions untied to the applicable standards and governing law must fail.

10         **C.     BlackBerry Has Proven Infringement of the D'775 Patent**

11            Recognizing that a proper comparison of the D'775 design and the accused Typo Keyboard

12   would be devastating to its position, Typo compares a shrunken image of a Typo keyboard case inside

13   packaging compared to a blown-up excerpt of the patented design.   Opp. at 21; *see* Lucente ¶41.   That

14   choice speaks volumes about the starkness of Typo's intentional infringement when the correct

15   infringement comparison and analysis is utilized, as BlackBerry demonstrated in its moving papers.   *Id.*;

16   Mot. at 11-13; Lucente Opening Dec. ¶¶50-78; *see also Contessa Food Prods., Inc. v. Conagra*, 282 F.3d

17   1370, 1381-82 (Fed. Cir. at 2012) (remanding to trial court to remove packaging from accused device

18   before conducting infringement analysis); *Sun Hill Indus. Inc., v. Easter Unlimited, Inc.*, 48 F.3d 1193,

19   1196-97 (Fed. Cir. 1995), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665 (error to

20   consider difference in size in assessing infringement when design patents not limited by size)).

21            As Typo itself stated, the Federal Circuit has warned against "assigning exaggerated importance

22   to small differences between the claimed and accused designs."   Opp. at 19 (quoting and citing *Egyptian*

23   *Goddess*, 543 F.3d at 678).   Furthermore, Typo's $99 price point—lauded by Typo as a reason

24   consumers would not be confused (Opp. at 1)—indicates that the ordinary purchaser would be *more*

25   likely to be deceived, because she is likely to pay less attention in purchasing an inexpensive case than a

26   smartphone.   Lucente ¶42; *see Braun*, 975 F.2d 815, 820, fn. 9 (Fed. Cir. 815).   Despite these

27   admissions, Typo fails to address BlackBerry's contention that the ordinary observer would conclude that

28   the accused Typo Keyboard is deceptively similar to the D'775 patent upon performing a visual

1  comparison of the accused and claimed designs, and instead highlights minor differences that are

2  insignificant, irrelevant, and inaccurate.   Lucente ¶¶37-50.   Although Typo provides the Court with no

3  comparisons of any prior art next to the accused Typo Keyboard and the D'775 patent, a review of the

4  "prior art" identified by Typo nonetheless makes clear that the Typo Keyboard is far more similar to the

5  D'775 patent than to any of the references identified by Typo.   Lucente ¶51.   Nothing in Typo's

6  Opposition undermines BlackBerry's clear likelihood of success on the merits regarding infringement.

7  *See* Lucente 4-5, 7, 9-11.¶[8]

8  **VI.    AN IMMEDIATE INJUNCTION IS NEEDED TO PREVENT IRREPARABLE HARM**

9       **A.    Typo Failed to Rebut BlackBerry's Evidence Of Irreparable Harm**

10        Typo does not address most of BlackBerry's arguments for irreparable harm.   For example, Typo

11  does not contest that its business model is predicated on persuading BlackBerry users to buy a Typo

12  Keyboard to add onto an iPhone instead.   There is no denying that fact because Typo advertises that its

13  keyboard was developed to make it possible for users to get rid of their BlackBerries, aka phones "for

14  typing."   Lynch Opening Dec. Ex. 4, Dkt. 13-4, at 20.   Nor does Typo's Opposition contest that it

15  directly and intentionally copied the keyboard design of the BlackBerry Q10, including BlackBerry's

16  distinctive design features.   Nor can it, given that the Typo Keyboard is nearly identical to the D'775

17  patent and BlackBerry Q10 keyboard.   Lucente ¶4.   Typo does not disagree that this deceptively similar

18  appearance creates the impression that BlackBerry approves of the Typo Keyboard.   And it does not

19  dispute that many reviews have described the Typo Keyboard as an inferior version of a BlackBerry

20  keyboard, or contest that this perception will harm BlackBerry's relationship with its customers. This last

21  unrebutted fact itself constitutes irreparable harm.   *See Clamp-Swing Pricing Co. v. Super Market*

22  *Merchandising and Supply, Inc.*, No. 13-cv-04515-WHO, 2013 WL 6199155, at *4 (N.D. Cal. Nov. 21,

23  2013) ("inferior quality of an infringing product can constitute irreparable harm").

24  _____

25  [8]    Typo's equitable estoppel argument based on BlackBerry's purported failure to sue third parties is
contrary to the law and must fail.   Opp. at 22.   Estoppel can only lie when plaintiff failed to take action

26  against defendant and defendant continued its conduct in detrimental reliance.   *See, e.g., Scholle Corp. v.
Blackhawk Molding Co., Inc.*, 133 F.3d 1469 (Fed. Cir. 1998).   The cited case of *Electromotive Div. of

27  Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 275 F. Supp. 2d 850, 852-55 (E.D. Mich.
2003), is distinguishable because Typo and BlackBerry never had prior dealings.   Finally, any claimed

28  reliance by Typo would be unreasonable because it is predicated on the unsubstantiated and inaccurate
claim that all the third party devices cited in its opposition infringe BlackBerry's patents.   Opp. at 22-23.

1    Nor does Typo dispute that BlackBerry has invested very significant resources in developing,

2    advertising, and marketing its iconic keyboard, that consumers associate the iconic keyboard design with

3    BlackBerry, or that BlackBerry's keyboard is one of the primary sales drivers.   Typo sets up a straw man

4    by arguing that BlackBerry's recent device sales indicate that it has not accumulated public goodwill, but

5    does not refute the widespread acclaim for BlackBerry's iconic keyboard and the importance of

6    BlackBerry's keyboard to its customer base.   Opp. at 24.   Typo also fails to address the detrimental

7    impact on Blackberry resulting from each sale lost to a competing product.

8    Typo's hollow claims that BlackBerry will not lose sales because and the parties allegedly sell in

9    different channels to different customers are absurd, untrue, and entitled to no weight.   Opp. at 24-25.

10   Typo tries to leverage a single statement by BlackBerry CEO John Chen into abandonment of consumer

11   business. This isolated, out of context statement cannot meet Typo's burden of refuting BlackBerry's

12   evidence of irreparable harm, and Mr. Chen has made clear that Typo's speculation is erroneous:

13       And central to our productivity focus is our keyboard. BlackBerry has invested years of
         research and development to create the world's best mobile keyboard, and that will continue
14       to be a central focus for us. . . . One critical challenge we have been addressing is the
         company's broad approach on both enterprise and consumer markets. . . . [This] doesn't
15       mean we are turning our back on the consumer--far from it . . . .

16   Lynch Reply Dec. ("Lynch") Ex. 1. Typo says it is directed to consumers, but it advertises its product as

17   an "indispensible business tool" and shows only businessmen, including Typo counsel Mr. Taillieu, as its

18   typical customers.   Lynch Opening Dec. Ex. 4 at 20-23.[9]

19   Finally, Typo disingenuously attempts to deny the harmful effect of sales of the Typo Keyboard

20   on BlackBerry by arguing that purchasers of the Typo Keyboard are iPhone owners.   Opp. at 24-25.

21   Typo does not *refute* irreparable harm, it *admits* it.   Typo's own advertising copy states that the Typo

22   Keyboard is intended to allow users who own an iPhone and a phone "for typing" to drop the latter and

23   use only an iPhone supplemented by a Typo Keyboard.   Lynch Opening Dec. Ex. 4 at 20.   By selling its

24   infringing knock-off keyboard, Typo also makes it possible for loyal BlackBerry users who want a

25
26       [9]   Typo also mischaracterizes the intent of a press release quoting BlackBerry's general counsel,
         (Opp at 25-26), and conspicuously omits the very next statement:   "The Typo Keyboard violates
27       BlackBerry's intellectual property rights, and BlackBerry will protect those rights from blatant copying
         and infringement. BlackBerry's iconic physical keyboard designs have been recognized by the press and
28       the public as a significant market differentiator for its mobile handheld devices."   Lynch Ex. 2.   This
         does not counter BlackBerry's strong showing of irreparable harm in support of its motion.

710.00002/5751203.8

1    physical keyboard to switch to an iPhone.   That the user purchases the iPhone itself from Apple does not

2    mitigate Typo's critical role in enabling the lost sale.   BlackBerry's evidence about the long-term harm

3    caused by each such loss of a BlackBerry customer is unrefuted.   Douglas Dec., Dkt. 11-6 ¶¶27-37.

4         BlackBerry's efforts to preserve its customer base are threatened by knock-off products like the

5    Typo Keyboard and its express goal to eliminate a BlackBerry user with each and every sale Typo makes.

6    The harm Typo is inflicting on BlackBerry could not be any more irreparable and must be stopped.

7    **B.     The Balance of Equities Favors BlackBerry**

8         This Court should not give any weight to Typo's internally inconsistent characterizations of

9    BlackBerry's success, or lack thereof.   Opp. at 26.   Typo's arguments that its business would be

10   damaged by a preliminary injunction are unavailing, and would amount to a rule barring a business from

11   obtaining a preliminary injunction against a wrongful competitor.   "One who elects to build a business

12   on a product found to infringe cannot be heard to complain if an injunction against continuing

13   infringement destroys the business so elected."   *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003

14   n.12 (Fed. Cir. 1986); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000);

15   *see also Cadence Design Sys., Inc. v. Avant Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (reversible error for

16   a district court to even consider 'the fact that an injunction would be devastating to [defendant's]

17   business once the plaintiff has made a strong showing of likely success on the merits of a copyright

18   infringement case").   The balance of harms weighs firmly in favor of BlackBerry and against Typo,

19   which chose to put a knock-off BlackBerry keyboard on its first and only product.

20   **C.     A Preliminary Injunction Serves the Public Interest**

21        The public's interest in using a Typo Keyboard is minimal, particularly given the availability of

22   alternative add-on keyboards.   *E.g.*, Lucente Opening Dec. ¶¶41-43.   Any such interest is far

23   outweighed by the significant public interest in furthering the progress of science by enforcing

24   BlackBerry's patent rights; an interest so important it is enshrined in Art. 1, Sec. 8 of the Constitution.

25   **VII.   CONCLUSION**

26        For the foregoing reasons, BlackBerry respectfully requests that the Court grant BlackBerry's

27   Motion for a Preliminary Injunction.

28

1  DATED:   February 12, 2014                    QUINN EMANUEL URQUHART &
2                                                SULLIVAN, LLP

3
                                                 By   /s/ Kevin P.B. Johnson
4                                                     Kevin P. B. Johnson
                                                      Attorney for BlackBerry Limited
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28