UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>TYPO PRODUCTS LLC,<br><br>Defendant. | Case No. 14-cv-00023-WHO<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF PURSUANT TO FED. R. CIV. P. 60(b); ORDERING LIMITED DISCOVERY REGARDING PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT**<br><br>Re: Dkt. Nos. 70, 73 |

**INTRODUCTION**

On March 28, 2014, I granted plaintiff Blackberry Limited's motion for a preliminary injunction barring defendant Typo Products LLC from selling its add-on keyboard for the iPhone which, Blackberry alleges, violates Blackberry's patents. The parties now seek ironically divergent action on the preliminary injunction: Typo asks for relief from the preliminary injunction under Federal Rule of Civil Procedure 60(b) because it has introduced a new keyboard which, it contends, does not infringe. In contrast, Blackberry seeks an order to show cause why Typo should not be held in contempt for violating the preliminary injunction by selling and distributing the enjoined keyboard.

Typo's motion is DENIED because its introduction of a new keyboard is not grounds for lifting the preliminary injunction. The preliminary injunction remains in effect. Blackberry's motion is GRANTED IN PART. Typo has violated the preliminary injunction by providing

replacement keyboards under its warranty program. Blackberry has raised significant questions suggesting that Typo's sales to foreign retailers after the injunction went into effect and SMI Investments's sales to consumers after the injunction went into effect, also violated the preliminary injunction. Blackberry is authorized to conduct additional discovery to determine whether Typo has in fact violated the preliminary injunction on these grounds and, if so, the extent of the violation. Blackberry's request for an order to show cause is continued until the results of this discovery can be presented to me.

**BACKGROUND**

The preliminary injunction which I issued provided that:

> Upon the posting of a bond by Blackberry, Typo Products LLC and its officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, ARE ENJOINED FROM:
>
> a. making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing Typo Products's Typo Keyboard Case, which is depicted in BlackBerry's moving papers, and any product that is no more than colorably different from these specified products and embodies any design contained in U.S. Design Patent No. D685,775; and
>
> b. making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing Typo Products's Typo Keyboard Case, and any product that is no more than colorably different from the specified products and infringes U.S. Patent No. 7,629,964.

Dkt. No. 39 at 24. The preliminary injunction took effect when Blackberry posted the required bond on April 15, 2014. *See* Dkt. No. 55.

On June 11, 2014, Typo filed a motion for relief from the preliminary injunction, ostensibly pursuant to Federal Rule of Civil Procedure 60(b). Dkt. No. 70. Typo argues that relief is appropriate because it has developed a new non-infringing keyboard.

On July 23, 2014, Blackberry filed a motion for an order to show cause why Typo should not be held in contempt of the preliminary injunction order. Dkt. No. 73. Blackberry alleges that Typo has continued to sell and distribute the enjoined Typo keyboard.

2

## I. TYPO'S MOTION FOR RELIEF FROM THE PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)

Typo contends that it has developed a non-infringing design for its keyboard. It moves for relief from the preliminary injunction "pursuant to Rule 60(b)(6) to permit Typo to sell its new Typo keyboard." Dkt. No. 70 at 4. Blackberry opposes the motion. Dkt. No. 71. Typo did not file a reply brief.

Typo's motion is DENIED. Federal Rule of Civil Procedure 60(b)(6) provides that a court may relieve a party from an order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Typo's redesign of its keyboard does not justify relief from the preliminary injunction. The preliminary injunction covers Typo's keyboard as it existed at the time "and any product that is no more than colorably different" from that keyboard. Dkt. No. 39 at 24. Typo has presented no arguments that the order was erroneous or should otherwise be vacated. To the extent that Typo has designed a new keyboard which does not infringe the patents asserted by Blackberry, that new keyboard is not subject to the preliminary injunction. But Typo's design of a supposedly non-infringing design is not grounds for relief from the preliminary injunction.[1] The preliminary injunction remains in effect.

## II. MOTION FOR AN ORDER TO SHOW CAUSE WHY TYPO SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER

Blackberry contends that Typo has violated, or potentially violated, the preliminary injunction in three ways: (i) Typo sold over 11,000 enjoined keyboards from the United States to foreign retailers after the injunction went into effect, (ii) under its warranty replacement program, Typo provided its customers with enjoined keyboards after the injunction went into effect; and

---

[1] If Typo is seeking an opinion from this Court that its new design does not infringe Blackberry's patents, Rule 60(b) is not the proper vehicle for doing so. To the extent that a case or controversy exists, a separate declaratory judgment action would be the proper vehicle for Typo to seek a declaration that its redesign does not infringe. *See, e.g. Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012) ("in determining whether a justiciable controversy is present, the analysis must be calibrated to the particular facts of each case, with the fundamental inquiry being whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (internal citation omitted).

1  (iii) on the day the Court issued the preliminary injunction (but before it took effect), Typo sold
2  over 4,000 enjoined keyboards to SMI Investments, an entity with which Typo may be acting in
3  concert.

4  Typo concedes that these sales and replacements occurred, but it disputes that it violated
5  the preliminary injunction. Typo's position notwithstanding, for the reasons stated below, the
6  sales and replacements raise significant question of whether Typo has violated the preliminary
7  injunction. Additional discovery is necessary to determine whether that is in fact the case and, if
8  so, the extent of the violation. *See, e.g., California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025,
9  1034 (9th Cir. 2008) ("If significant questions regarding noncompliance have been raised,
10 appropriate discovery should be granted.").

**A. Typo's sales to foreign retailers after the injunction went into effect**

Typo founder and CEO, Laurence Hallier, states in a declaration that "[s]ince April 15, 2014, Typo has shipped approximately 11,000 keyboards to independent foreign retailers/distributors in Canada, the Middle East and Asia." Hallier Decl. ¶ 27, Dkt. No. 81-1. Typo has provided invoices indicating that it received over $800,000 for these sales. *See* Dkt. No. 81-5 (invoices). The preliminary injunction bars Typo from "making, using, offering to sell, or selling [the enjoined keyboard] within the United States." The question, then, is whether Typo's sales or offers to the "independent foreign retailers/distributors" were sales or offers to sell "within the United States."

Typo contends that these sales do not violate the preliminary injunction because they were "sold and delivered entirely outside of the United States" and were not or intended to be sold in the United States.[2] Typo Opp. at 11. Typo appears to misunderstand the preliminary injunction: what matters is whether the sales *to* the foreign retailers constitute sales or offers to sell within the

---

[2] Hallier claims that "[t]hese Typo keyboards were sold and shipped to outside of the United States for sale outside of the United States and were never intended to be sold in the United States." Hallier Decl. ¶ 29. Typo's opposition brief states that "these sales from a warehouse in China to independent foreign retailer/distributors in Canada, the Middle East and Asia took place entirely outside the United States." Opp. at 12. However, Hallier's declaration does not state that the keyboards were sold from a warehouse in China and that all the negotiations took place outside the United States.

4

United States; it is beside the point where the foreign retailers ultimately sell the keyboards to consumers. The fact that the enjoined keyboards were supposedly "delivered entirely outside of the United States" does not mean that the sale or offer for sale did not occur in the United States. *See, e.g.*, *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("simply because an article is delivered 'free on board' outside of the forum, a 'sale' is not necessarily precluded from occurring in the forum").

In determining whether a sale or offer to sale occurred "within the United States," courts consider various factors, including the location of the contemplated future sale, the location of delivery, the location of performance, the location of the buyer, the location of the passage of legal title, the location of contracting; the location of the negotiation of the sales contract, and the location of the execution of the sales contract. *See, e.g., MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 580836, at *2-3 (N.D. Cal. Feb. 13, 2014); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 986 F. Supp. 2d 574, 646 (W.D. Pa. 2013); *MEMC Elec. Materials*, 420 F.3d at 1377. There are some indicia in the record that the sales or offers to sell occurred within the United States: the invoices indicate that the sale was consummated with the Typo entity located in the United States; payment was directed to Typo at a Wells Fargo in the United States; and some buyers apparently arranged to retrieve the enjoined keyboards directly from Typo. *See* Dkt. No. 81-5 (invoices). Nonetheless, given the various factors relevant to the inquiry, additional discovery is necessary to determine whether or the extent to which Typo's sales or offers to sell to the foreign retailers were within the United States.

**B. Replacement keyboards provided pursuant to a warranty**

Hallier states that "[s]ince April 15th, to the extent that a customer has an issue with his or her Typo case that is covered under Typo's warranty program, Typo will send that customer a replacement Typo case only if such Typo case has been purchased by the customer directly from Typo and prior to April 15, 2014." Hallier Decl. ¶ 38. The record does not reflect how many replacement enjoined keyboards Typo has provided to its customers under its warranty program.

In its brief, Typo contended that providing replacement devices to its customers under the warranty program does not violate the injunction because it does not constitute "distribution" and

1  because Typo is contractually required by the warranty to provide its customers a replacement
2  keyboard. Typo is mistaken: its warranty program does not give it license to provide enjoined
3  keyboards to its customers after the preliminary injunction took effect. *Cf Aro Mfg. Co. v.*
4  *Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) ("If the owner's use infringed, so also
5  did his repair of the top-structure, as by replacing the worn-out fabric component. Where use
6  infringes, repair does also, for it perpetuates the infringing use."). At oral argument, counsel for
7  Typo stated that Typo misapprehended the relevant law and conceded that the warranty
8  replacements likely violated the preliminary injunction. Counsel argued that the violation was
9  minimal, however, as it involved fewer than 400 replacement keyboards.
10  It is clear that Typo has violated the preliminary injunction. Additional discovery is
11  necessary to determine the extent of Typo's distribution of enjoined keyboards under the warranty
12  program.

### C. Typo's relationship with SMI Investments

14  Typo sold 4,008 enjoined keyboards to SMI Investments before the injunction took effect.
15  Hallier Decl. ¶ 16. Typo's brief states that "Typo has no knowledge of to whom or where SMI
16  Investment has sold the Typo cases." Opp. at 9. However, Hallier's declaration does not contain
17  a similar statement regarding SMI Investments.
18  Blackberry contends that SMI Investments "is closely affiliated with Typo." Reply at 1.
19  Blackberry has presented evidence that an officer of SMI Investments, Chris Yergensen, is also
20  Typo's registered agent and is also general counsel of Show Media, a company founded and run
21  by Hallier. *See* Dkt. No. 83-3 (SMI Investment's entity information from Nevada Secretary of
22  State); Dkt. No. 83-4 ("Team" webpage for Show Media identifying Yergensen). Blackberry
23  seeks discovery "to uncover the full extent of Typo's relationship and dealings with SMI." Reply
24  at 8. If SMI Investments is acting in concert with Typo, SMI Investments would be subject to the
25  preliminary injunction and its sales after the injunction went into effect would violate the
26  injunction. *See* Dkt. No. 39 at 24 (preliminary injunction applies to Typo "and its officers, agents,
27  affiliates, employees, and attorneys, *and all those persons acting or attempting to act in concert or*
28  *participation with them*") (emphasis added).

The evidence presented by Blackberry is sufficient to raise significant questions regarding Typo's relationship with SMI Investments. Additional discovery is necessary to determine whether SMI Investments is acting in concert or participation with Typo. Blackberry will also need to discover SMI Investments's sales records so that Blackberry can determine the extent of the violation, if SMI Investments is indeed acting in concert or participation with Typo.

**D. Contempt**

I am very concerned with what appears to be deliberate contempt of the preliminary injunction by Typo. In its opposition to the motion for a preliminary injunction, Typo represented that it sold its Typo keyboard exclusively through its website. Dkt. No. 25 at 24. Blackberry then uncovered evidence that the keyboard was for sale at stores in various airports. Dkt. No. 51-3 at 1. Then, on the day that the preliminary injunction order was issued (but before it took effect), Typo sold 4,000 keyboards to SMI Investments, Hallier Decl. ¶ 16, with which Typo appears to be closely affiliated. After the preliminary injunction took effect, Typo sold over 11,000 enjoined keyboards and provided hundreds of enjoined keyboards to its customers under its warranty program. With the exception of the warranty replacements, discovery will prove whether these actions violated the preliminary injunction, i.e., if SMI Investments is acting in concert or participation with Typo, and if Typo's sales and offers to sell to the foreign retailers were within the United States. But given the evidence in the record so far, those are significant questions. Blackberry may renew its motion for an order to show cause at any time after receiving the discovery discussed below.

**E. Additional discovery**

Blackberry requests the following discovery in connection with determining Typo's compliance with the preliminary injunction:

- Depositions of
    i. a 30(b)(6) designee for Typo,
    ii. Laurence Hallier, and
    iii. Chris Yergensen on topics relating to potential violations of the preliminary injunction order;
- Eight interrogatories relating to potential violation of the preliminary injunction order;

7

- Document requests relating to potential violations of the preliminary injunction order.

These requests are appropriate in light of the serious questions raised regarding Typo's possible violations of the preliminary injunction. I authorize Blackberry to take this discovery, in addition to the discovery otherwise allotted to Blackberry in this case.

Blackberry seeks expedited discovery, to be completed within 45 days. However, claim construction is fast approaching and Typo has limited legal resources. It will be hard pressed to respond to expedited discovery and briefing on this topic while preparing the claim construction briefing and for the hearing. While I will not require expedited discovery, Typo shall respond to the interrogatories and to the document requests with documents within thirty days of the date they are propounded. The depositions shall be set at the reasonable convenience of counsel and the witnesses in recognition of both the amount of discovery that needs to be completed prior to the close of fact discovery on December 9, 2014 and my desire to know the extent to which Typo has violated the preliminary injunction.

## CONCLUSION

Typo's motion for relief from the preliminary injunction is DENIED. Dkt. No. 70. Blackberry's motion for order to show cause why Typo should not be held in contempt of the preliminary injunction is GRANTED IN PART. Dkt. No. 73. Blackberry is authorized to take the following discovery in connection with its motion for an order to show cause:

- Depositions of
    i. a 30(b)(6) designee for Typo,
    ii. Laurence Hallier, and
    iii. Chris Yergensen on topics relating to potential violations of the preliminary injunction order;
- Eight interrogatories relating to potential violations of the preliminary injunction order;
- Document requests relating to potential violations of the preliminary injunction order.

This discovery is in addition to the discovery otherwise allotted to Blackberry in this case.

8

Blackberry may re-notice its motion at its convenience once the discovery is completed.

**IT IS SO ORDERED**.

Dated: August 21, 2014



WILLIAM H. ORRICK
United States District Judge