UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BLACKBERRY LIMITED,

    Plaintiff,

    v.

TYPO PRODUCTS LLC,

    Defendant.

Case No. 14-cv-00023-WHO

**CLAIM CONSTRUCTION ORDER**

Re: Dkt. Nos. 102, 109

## INTRODUCTION

Plaintiff BlackBerry Limited alleges that defendant Typo Products LLC's add-on hardware keyboard for the iPhone violates utility and design patents held by BlackBerry. The parties have requested that I construe various terms in the asserted claims. Based on the parties' briefs and argument of counsel, I construe the disputed terms as set forth below.

## LEGAL STANDARD

Claim construction is a matter of law for the court's determination. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372 (1996). In order to construe claim terms, "the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008). The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citations omitted). But the ordinary and customary meaning of a claim term cannot be determined in a vacuum. Intrinsic evidence—the claims, specification, and the prosecution history of the patent—"is the primary tool to supply the context for interpretation of disputed claim terms." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005); *Vitronics Corp. v. Conceptronic, Inc.*,

90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history.").

The "specification necessarily informs the proper construction of the claims." *Phillips*, 415 F.3d at 1316. It "is the single best guide to the meaning of a disputed term, and . . . acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* at 1321 (quotations omitted). However, "[t]hat claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). "The claim, not the specification, measures the invention." *Id.* (citation omitted). For example, "merely because the specification only describes one embodiment is not a sufficient reason to limit the claims to that embodiment." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372 (Fed. Cir. 2003). Nonetheless, "claims must be construed so as to be consistent with the specification." *Phillips,* 415 F.3d at 1316.

## DISCUSSION

BlackBerry alleges that Typo infringes United States Patents 7,629,964 (the "'964 patent"), 8,162,552 (the "'552 patent"), and D685,775 (the "D'775 patent").[1] Dkt. No. 63. I address each patent in turn.

### I. CONSTRUCTION OF TERMS IN '964 PATENT

**A.** *Device* **('964 patent, claims 5, 6-8, 13, 19)**

| BlackBerry's proposed construction | Typo's proposed construction | Court's construction |
|---|---|---|
| Plain and ordinary meaning | A messaging device with an integral keyboard optimized for use substantially with the thumbs | Plain and ordinary meaning |

BlackBerry contends that the term "device" in the '964 patent should be given its plain and

---

[1] The D'775 patent is a design patent. The '964 and '552 patents are utility patents.

1 ordinary meaning (not construed). BlackBerry points out that I previously declined to construe
2 "device," as used in the '964 patent, in connection with BlackBerry's motion for a preliminary
3 injunction, where I stated that the term "device" "is readily understood and does not require
4 construction." Dkt. No. 39 at 12. I specifically rejected Typo's argument that "device" should be
5 construed as "messaging device." *Id.*

6 In contrast, Typo proposes that "device," as used in the '964 patent, be construed as "a
7 messaging device with an integral keyboard optimized for use substantially with the thumbs."[2]
8 Typo contends that this construction is warranted because "the specification discloses a specific
9 type of device which has an integrated keyboard and confirms that the inventors did not
10 contemplate any other type of device at the time of the invention." Dkt. No. 109 at 4. According
11 to Typo, if "device" is not construed as requiring an integrated keyboard, certain of the claims are
12 invalid for failing to satisfy the written description requirement set forth in 35 U.S.C. § 112 ¶ 1
13 because the specification only discloses a device which integrates a keyboard into the device.[3] For
14 example, claims 1, 3, and 4 of the '964 patent recite a device with an "integral" or "integrated"
15 keyboard, whereas claim 19 recites a keyboard "for use" with a device, but not "integral to" or
16 "integrated with" the device.

17 I do not agree that "device" should be construed as "a messaging device with an integral
18 keyboard optimized for use substantially with the thumbs." The claims themselves recite various
19 devices, including a "handheld messaging device" (claim 1); "a handheld electronic
20 communication device" (claim 5); and "a mobile communication device" (claim 19). In addition,
21 as noted above, claim 19 recites a keyboard which is not "integral to" or "integrated with" the
22 device. The claims therefore show that the patentee deliberately recited various devices, not

---

[2] As discussed below, Typo proposes a different construction for the claim term "device" in the '552 patent.

[3] 35 U.S.C. § 112 ¶ 1 provides: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

1  limited to a "messaging device" or one "with an integral keyboard." As I stated previously, the
2  term "device," is readily understood and does not require construction. Dkt. No. 39 at 12. Rather,
3  the term "device" will be given its plain and ordinary meaning.
4      Typo argued repeatedly that claims which exceed the invention disclosed in the
5  specification are invalid for failing to satisfy the written description requirement. That is true.
6  *See, e.g., Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1355 (Fed. Cir. 2011) (affirming
7  summary judgment of invalidity where "claims 31–36 exceed in scope the subject matter that
8  inventor Mr. Swan chose to disclose to the public in the written description"). But claims should
9  be construed consistent with the "plain meaning of the words of the claims themselves," even if
10 that results in a construction broader than the invention disclosed in the specification. *See, e.g., id.*
11 at 1354 ("While the specification does not disclose a handguard accessory completely supported
12 by the barrel nut, the district court properly construed claims 31–36 as covering such a design. To
13 construe the claims otherwise would ignore the plain meaning of the words of the claims
14 themselves.") (citation omitted). I express no view on whether claim 19 (or any other claim) of
15 the '964 patent in fact exceeds the scope of the subject matter disclosed in the specification; I
16 merely note that satisfying the written description requirement is not grounds to ignore the plain
17 meaning of the words of the claims themselves, as Typo's proposed construction does. If Typo
18 believes that the asserted claims, as construed in this order, are invalid for failing to satisfy the
19 written description requirement, Typo can raise that issue on summary judgment.

## II. CONSTRUCTION OF TERMS IN '552 PATENT

### A. *Device* ('552 patent, claims 1, 8, 9, 11-16, 20)

| BlackBerry's proposed construction | Typo's proposed construction | Court's construction |
|---|---|---|
| Plain and ordinary meaning | A wireless handheld mobile communication device with an integrated keyboard | Plain and ordinary meaning |

    As with the '964 patent, BlackBerry contends that the term "device" in the '552 patent should be given its plain and ordinary meaning (not construed). Typo disagrees. It proposes that

4

1  "device," as used in the claims of the '964 patent, be construed as "a wireless handheld mobile
2  communication device with an integrated keyboard" because "[t]he inventors did not disclose as
3  their invention, or otherwise disclose in any manner, a stand-alone keyboard or a device which
4  does not have an integral keyboard." Dkt. No. 109 at 8.

5  For the reasons discussed above in connection with the '964 patent, Typo's proposed
6  construction reads in limitations which are contrary to the plain language of the claims. The term
7  "device" is readily understood and does not require construction. The claims themselves recite
8  various limitations on the device. Whether the patent, as construed, fails the written description
9  requirement can be addressed on summary judgment if Typo chooses.

**B.** *With a top of the crest diagonally oriented on the key* **('552 patent, claims 1, 9)**

| BlackBerry's proposed construction | Typo's proposed construction | Court's construction |
|---|---|---|
| With a top of the crest oriented across the key at an angle in a straight, rounded, or curved manner | The top engagement surface is inclined in a direction that extends diagonally from opposite corners of the key (i.e., from the upper right hand corner to the lower left hand corner, or from the upper left hand corner to the lower right hand corner, depending on the location of the key on the keyboard) | With a top of the crest oriented across the key at an angle in a straight, rounded, or curved manner |

20  BlackBerry proposes that "with a top of the crest diagonally oriented on the key" be
21  construed as "with a top of the crest oriented across the key at an angle in a straight, rounded, or
22  curved manner." The only portion of BlackBerry's proposed construction that departs from the
23  claim language is the proposed phrase "oriented across the key at an angle in a straight, rounded,
24  or curved manner," which BlackBerry proposes in place of the claim phrase, "diagonally oriented
25  on the key." BlackBerry contends that the patentee intended the claim to include keys where the
26  top of the crest on the "top engagement surface"[4] is oriented in a rounded or curved manner, as

---

[4] The "top engagement surface" refers to the portion of the key that makes contact with the thumbs. *See, e.g.,* '552 patent at 4:49-54.

5

1 opposed to just in a straight line, and therefore may not meet "some mathematical definitions of
2 diagonal." Dkt. No. 102 at 12. In support, BlackBerry cites the specification, which states that
3 "[a]lthough the apex of the crest 41 is illustrated as straight in FIG. 4a, *other embodiments in*
4 *which the diagonally oriented crest is rounded or curved are within the scope of this disclosure*."
5 '552 patent at 4:60-63 (emphasis added).

6      In opposition, Typo correctly points out that BlackBerry's proposed construction
7 presupposes that "apex of the crest," as used in the portion of the specification cited by
8 BlackBerry, is interchangeable with the phrase, "top of the crest," which is used in the claims but
9 nowhere in the specification. Typo contends that "apex of the crest" and "top of the crest" are in
10 fact not interchangeable. According to Typo, "apex of the crest" is the ridge in the upper inward-
11 facing corner of each key, as illustrated by reference 37 in Figure 4a below, and this ridge cannot
12 be the "top of the crest" referenced in the claims because it does not run diagonally across the key,
13 as the claims require.



FIG. 4a

Typo's argument is not persuasive. As an initial matter, Typo's contention that the
patentee defined "apex of the crest" as the ridge in reference 37 in Figure 4a is belied by the
specification, which specifically states that the "apex of the crest" is illustrated by reference 41.
*See* '552 patent at 4:60-61 ("Although the apex of the crest 41 is illustrated as straight in FIG. 4a,
other embodiments in which the diagonally oriented crest is rounded or curved are within the

1  scope of this disclosure."). In contrast, the only reference in the specification to reference 37
2  states: "As may also be appreciated in FIG. 4a, the top engagement surface 31 of each of the
3  depressible keys terminates at an upper edge thereof *in a diagonally running ridge 37* from which
4  the balance of the respective top engagement surface 31 slopes." '552 patent at 4:64-5:1
5  (emphasis added). It is clear that reference 37 refers to the ridge formed by the raised edge in the
6  corner of each key, not the "apex of the crest."

7  I agree with BlackBerry that the claim term, "top of the crest," has the same meaning as
8  the term, "apex of the crest," as used in the specification. Not only are "top" and "apex"
9  synonymous, but the two phrases are used in the same manner in the claims and specification,
10  respectively. Claim 1 recites that:

> [E]ach of the depressible keys has a top engagement surface of which an upper inboard portion is raised relative to a lower outboard portion thereof, wherein the top engagement surface of at least some of the depressible keys has a generally inclined crest shape with a **top of the crest** diagonally oriented on the key.

14  '552 patent at 14:40-45. Likewise, the specification states that:

> Each top engagement surface 31 is generally crest shaped 41, with the **apex of the crest** running generally diagonally across the respective key . . . .

17  '552 patent at 4:55-57. In both contexts, the terms "top of the crest" and "apex of the crest,"
18  respectively, refer to the shape and direction of the crest on the surface of the keys, as illustrated
19  by reference 41 in Figure 4a.

20  Having determined that the claim term "top of the crest" is synonymous with "apex of the
21  crest," as used in the specification, and refers to the shape and direction of the top of crest running
22  across the surface of the keys, the question remains whether the top of the crest must be exactly
23  diagonal, or whether it can be rounded or curved. As noted above, the specification states that
24  "[a]lthough the apex of the crest 41 is illustrated as straight in FIG. 4a, *other embodiments in*
25  *which the diagonally oriented crest is rounded or curved are within the scope of this disclosure*."
26  '552 patent at 4:60-63 (emphasis added). By stating that embodiments exist where the "diagonally
27  oriented" crest is "rounded or curved," the specification makes clear that the patentee did not
28  intend the term "diagonally oriented" to exclude shapes that were not straight, but includes

7

1  rounded or curved shapes. Similarly, the specification describes reference 37 in Figure 4a as a
2  "diagonally running ridge," but the ridge is curved, not straight, further indicating that the patentee
3  did not use the term "diagonally" to exclude curved shapes. '552 patent at 4:66.

4      Typo proposes that "with a top of the crest diagonally oriented on the key" be construed as
5  "The top engagement surface is inclined in a direction that extends diagonally from opposite
6  corners of the key (i.e., from the upper right hand corner to the lower left hand corner, or from the
7  upper left hand corner to the lower right hand corner, depending on the location of the key on the
8  keyboard)." In support, Typo asserts that the patent "discloses only one feature that is 'diagonally
9  oriented on the key' as the claim requires . . . . [and t]hat feature is the direction in which the top
10 engagement surface 31 inclines." Dkt. No. 109 at 9. This argument is unavailing. The
11 specification states that "the apex of the crest run[s] generally diagonally across the respective
12 key." '552 patent at 4:56-57. Accordingly, the specification makes clear that what is "diagonally
13 oriented" across the key is the "apex of the crest," not the direction in which the top engagement
14 surface inclines.[5]

15     Similarly, Typo argues that reference 41 in Figure 4a "indicates the 'diagonally oriented'
16 direction of the incline." Dkt. No. 41 at 9. However, the specification repeatedly makes clear that
17 reference 41 refers to the shape and direction of the crest running across the keys; not the
18 "direction of the incline." *See* '552 patent at 4:55 ("Each top engagement surface 31 is generally
19 crest shaped 41 . . . ."), 4:59-60 (". . . forming a diagonally oriented crest 41"); 4:60-61 ("the apex
20 of the crest 41 is illustrated as straight in FIG. 4a").

21     For the reasons stated above, I adopt BlackBerry's proposed construction of "with a top of
22 the crest diagonally oriented on the key" and construe that term as "with a top of the crest oriented
23 across the key at an angle in a straight, rounded, or curved manner."

---

[5] Of course, the incline of the key is related to the apex of the crest running across the key, since the crest causes an incline, as the claim language itself recognizes. *See, e.g.,* '552 patent, claim 1 at 14:42-45 ("wherein the top engagement surface of at least some of the depressible keys has a *generally inclined crest shape* with a top of the crest diagonally oriented on the key") (emphasis added). But Typo's proposed construction reads the crest out of the claim.

### III. CONSTRUCTION OF D'775 PATENT

| BlackBerry's proposed construction | Typo's proposed construction | Court's construction |
|---|---|---|
| No written construction necessary | A handheld electronic device containing a keyboard with (1) plain elongated strips between the rows of keys, (2) extensions, outward to the right and left beyond the width of the keys, at the ends of the elongated separating strips, (3) the height of the separating strips being proportioned relative to the height of the keys in the manner disclosed in the claim, and (4) the straightening of the three top rows of keys aligned in a straight line, and the bottom of the lowest key row being curved. | No verbal construction necessary |

The D'775 patent is a design patent and therefore does not have written claims. Rather, the D'775 patent claims the design for a handheld electronic device shown in its figures. Typo acknowledges the general rule that a design patent claim need not be interpreted in words. But Typo contends that, in this case, the "design patent claim construction should be articulated in words at least to limit the scope of the claim to the four features recited in the Reasons for Allowance." Dkt. No. 109 at 17. Typo seeks to construe the D'775 patent as:

> A handheld electronic device containing a keyboard with
>
> (1) plain elongated strips between the rows of keys,
>
> (2) extensions, outward to the right and left beyond the width of the keys, at the ends of the elongated separating strips,
>
> (3) the height of the separating strips being proportioned relative to the height of the keys in the manner disclosed in the claim, and
>
> (4) the straightening of the three top rows of keys aligned in a straight line, and the bottom of the lowest key row being curved.

I am not convinced that the examiner's Reasons for Allowance warrants limiting the D'755

9

1  patent to Typo's proposed construction.  The Federal Circuit instructs that whether prosecution
2  history limits the scope of a design patent "turns on the answers to three questions: (1) whether
3  there was a surrender; (2) whether it was for reasons of patentability; and (3) whether the accused
4  design is within the scope of the surrender." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats,*
5  *LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014).  In this case, there is no evidence that there was a
6  surrender, much less that any surrender was the reason for patentability.  There is therefore no
7  reason to depart from the general rule that "the preferable course ordinarily will be for a district
8  court not to attempt to 'construe' a design patent claim by providing a detailed verbal description
9  of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008).

10  At oral argument, counsel for Typo stated that Typo was not arguing prosecution history
11  estoppel, but that "the file history is still important to get context and help define what is the
12  invention," and that the patented invention here is limited to the four features identified in the
13  examiner's Reasons for Allowance.  Dkt. No. 121 at 29.  I fail to see a relevant distinction for
14  purposes of this analysis.  Typo may not be arguing prosecution history *estoppel*, which is a
15  defense to infringement under the doctrine of equivalents, but Typo appears to argue prosecution
16  history *disclaimer*, i.e., that during the prosecution of the D'775 patent, the patentee disclaimed a
17  certain meaning broader than Typo's proposed construction.  Prosecution history estoppel and
18  prosecution history disclaimer require the same showing.  *See, e.g., Omega Eng'g, Inc, v. Raytek*
19  *Corp.*, 334 F.3d 1314, 1326 n.1 (Fed. Cir. 2003) (noting that the standard for prosecution history
20  disclaimer "is the same standard applicable, in the context of the doctrine of equivalents, to the
21  doctrine of argument-based estoppel").  For the reasons stated above, Typo has failed to establish
22  that prosecution history disclaimer applies in this case. [6]  *See Pac. Coast Marine Windshields*, 739
23  F.3d at 702.

---

[6] I also note that the examiner did not state that the four limitations proposed by Typo were the only patentable features of the design. Rather, the examiner stated that the differences between the design and the prior art *included*, but were not necessarily limited to, those four features. *See* Dkt. No. 109-4 at 2 ("It is the examiner's position that these differences in design, *including at least* [the four features] all conjoin to create an *overall appearance* that patentably distinguishes the claimed design from the references developed by the examiner.") (emphasis added).

1   In any event, Typo offers no authority for limiting a design patent based on an examiner's
2   Reason for Allowance where there was no surrender by the patentee. *Z Produx, Inc. v. Make-Up*
3   *Art Cosmetics, Inc.*, 2013 WL 5941049 (C.D. Cal. Nov. 5, 2013) *aff'd,* 568 F. App'x 897 (Fed.
4   Cir. 2014), which Typo cites, did not limit a design patent to features recited in a Reasons for
5   Allowance, and is inapposite. Rather, in *Z Produx,* the court "f[ou]nd[] it necessary to provide a
6   brief verbal description of the relevant claimed ornamental elements of the #743 design." *Id*. at
7   *6. While the court did not explicitly state why it found it found it necessary to provide verbal
8   descriptions of the claimed elements, it did note that none of the elements included in the verbal
9   construction were visible in a photograph of the patented design that the plaintiff included in a
10  trademark application, suggesting that the presence of those elements in the patent was perhaps
11  not clear. *Id*. at *3.

12  For the reasons stated above and in my order on the preliminary injunction, I do not find it
13  necessary to provide a verbal description of the design patent. As I stated in the preliminary
14  injunction order, "[t]o the extent that Typo argues that only a few key features distinguish the
15  D'775 from the prior art, those key distinctions are captured in the infringement and anticipation
16  analyses, in which the 'ordinary observer' is deemed knowledgeable of the prior art." Dkt. No. 39
17  at 5 (citing *Egyptian Goddess,* 543 F.3d at 676, 682). I decline to verbally construe the D'775
18  patent.

### CONCLUSION

I construe the disputed terms as follows:

| Term | Construction |
|---|---|
| Device ('964 patent) | Plain and ordinary meaning |
| Device ('552 patent) | Plain and ordinary meaning |
| With a top of the crest oriented across the key at an angle in a straight, rounded, or curved manner ('552 patent) | With a top of the crest oriented across the key at an angle in a straight, rounded, or curved manner |
| D'775 patent | No verbal construction |

The parties will be before me on December 3, 2014 for argument on BlackBerry's motion

for leave to file an amended complaint.  I will hold a Case Management Conference at that time as well.  The parties shall file a Joint Case Management Statement on or before December 1, 2014, proposing a case management schedule for the remainder of the case and indicating if they think the schedule would need to be adjusted if Blackberry's motion to amend is granted (and, if so, how).

**IT IS SO ORDERED**.

Dated: November 20, 2014



WILLIAM H. ORRICK
United States District Judge