QUINN EMANUEL URQUHART & SULLIVAN LLP
James R. Asperger (Bar No. 83188)
jamesasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Ray R. Zado (Bar No. 208501)
rayzado@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

Attorneys for BlackBerry Limited

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BlackBerry Limited, a Canadian Corporation | CASE NO. 3:14-cv-23 |
| Plaintiff, | **BLACKBERRY  LIMITED'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, DILUTION,  UNFAIR BUSINESS PRACTICES, AND UNJUST ENRICHMENT** |
| vs. | |
| Typo Products LLC, a Nevada Limited Liability Company, | **DEMAND FOR JURY TRIAL** |
| and | |
| Show Media LLC, a Nevada Limited Liability Company | |
| Defendants. | |

Plaintiff BlackBerry Limited ("BlackBerry") complains against Typo Products LLC ("Typo") and Show Media LLC ("Show Media") as follows:

## INTRODUCTION

1.      BlackBerry revolutionized the mobile communications industry.  Its innovative, cutting-edge products changed the way millions of people around the world connect, converse, and share digital information.

2.      BlackBerry was founded in 1984 in Waterloo, Ontario by two engineering students, Mike Lazaridis and Douglas Fregin.  In its early years, the company—then named Research In Motion ("RIM")—focused its inventive energies on wireless data transmission.

3.      From its modest beginnings more than 30 years ago, BlackBerry has gone on to offer a portfolio of award-winning products, services, and embedded technologies to tens of millions of individual consumers and organizations around the world, including governments, educational institutions, and over 90% of Fortune 500 companies.  By transforming the way people communicate, BlackBerry laid a foundation for today's multibillion-dollar modern smartphone industry.

4.      BlackBerry has since been recognized as a leader in the design and the ergonomic aspects of mobile handheld devices.  In particular, BlackBerry has devoted substantial resources and research efforts to the development of a critical aspect of a mobile device's user interface – the keyboard.  BlackBerry's physical keyboard designs have been recognized by the press and public as "iconic" and a significant market differentiator.

5.      BlackBerry's innovations in keyboard design have given rise to broad intellectual property rights, including design patents, utility patents, and trade dress protection.

6.      Typo, however, has promoted and announced the imminent release of the Typo iPhone keyboard case (hereinafter "Typo Keyboard product") – an external case for the Apple iPhone 5/5s with an integrated physical keyboard.  But instead of developing its own keyboard design, Typo chose to copy BlackBerry's iconic keyboard design as embodied in, among others, BlackBerry's Q10 smartphone, seeking to trade on BlackBerry's commercial recognition and

1  goodwill.  Show Media has acted in concert with Typo in the development, promotion,

2  manufacturing, and sale of the Typo Keyboard product.

3         7.     By this action, BlackBerry seeks to put an end to Typo's and Show Media's

4  unlawful conduct and to obtain recompense for the harm that BlackBerry has suffered.

5                                **THE PARTIES**

6         8.     BlackBerry Limited is a Canadian company with its principal place of business at

7  2200 University Avenue East, Waterloo, Ontario, Canada N2K 0A7.

8         9.     On information and belief, Typo Products LLC is a Nevada limited liability

9  company with a principal place of business at 1100 Glendon Avenue, Suite 925, Los Angeles, CA

10  90024.  Typo operates and/or owns the website located at http://typokeyboards.com/.

11        10.    On information and belief, Show Media LLC is a Nevada limited liability company

12  with a principal place of business at 6623 Las Vegas Blvd South, Suite 370, Las Vegas, NV

13  89119.  Show Media LLC also operates a place of business at 1100 Glendon Ave., Suite #PH9,

14  Los Angeles, CA 90024.  Show Media operates and/or owns the website located at

15  http://www.showmedia.com/.

16                          **JURISDICTION AND VENUE**

17        11.    This Court has subject matter jurisdiction under 15 U.S.C. §§ 1114, 1125, and 28

18  U.S.C. §§ 1331, 1338(a), 1338(b) and 1367.

19        12.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C.

20  § 1367, in that the facts underlying the state law claims are so related to the patent and trademark

21  claims that they form part of the same case or controversy under Article III of the United States

22  Constitution.

23        13.    Defendant Typo is subject to personal jurisdiction in this Court because, inter alia,

24  and upon information and belief, Typo has its principal place of business and office in California

25  and directly and through agents regularly does, solicits and transacts business in the Northern

26  District of California and elsewhere in the state of California, including through its website at

27  http://typokeyboards.com/.  In particular, Typo has committed and continues to commit acts of

28  infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold,

marketed, and/or imported infringing products in the State of California, including in this District. Typo's acts cause injury to BlackBerry, including within this District.

14.     Defendant Show Media is subject to personal jurisdiction in this Court because, inter alia, and upon information and belief, Show Media has a place of business and office in California and directly and through agents regularly does, solicits and transacts business in the Northern District of California and elsewhere in the state of California, including through its website at http://www.showmedia.com/.  In particular, Show Media has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1125, and has offered for sale, sold, marketed, and/or imported infringing products in the State of California, including in this District.  Show Media's acts cause injury to BlackBerry, including within this District.

15.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

16.     Because this action is an Intellectual Property Action within the meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

## FACTS COMMON TO ALL CLAIMS

### BlackBerry's Innovation and Industry Recognition

17.      BlackBerry is a global leader in the mobile communications industry.  Through its significant investment in research and development over the past 30 years, BlackBerry has developed innovative, cutting-edge technologies that have changed the face of telecommunications.

18.     In the late 1990s, BlackBerry began to release a series of game-changing handheld mobile devices with physical keyboards that enabled users to send and receive email and messages on the go, without needing to be tethered to a modem or a desktop computer.  The innovative nature of the 1998 RIM 950 Wireless Handheld, for example, was instantly recognized, garnering both an Editor's Choice Award from CNET and Andrew Seybold's Outlook Award.   In

particular, the press praised the RIM 950's keyboard for its advanced ergonomic features, including an easy-to-type-on keyboard layout despite the device's miniature size.

19.    In 2002, BlackBerry released the BlackBerry 6710 and 6720 – the first BlackBerry devices capable of both sending emails and making phone calls.  The next year, BlackBerry introduced smartphone models that added built-in audio hardware and color screens.

20.    Since those first smartphones, BlackBerry has continued to offer handheld wireless products incorporating its distinctive keyboard designs, including the 7000 series and 8000 series, as well as the Electron, Curve, and Tour products.

21.    In 2008, BlackBerry introduced the first of its Bold line of smartphones, the 9000. The Bold 9000 featured an updated housing design, more robust software, and a ground-breaking physical keyboard with keys having sculpted surfaces specially designed to have a distinctive visual appearance while being optimized for thumb-typing.  This unique and distinctive keyboard was known within BlackBerry as an ergonomic surface keyboard, or "Ergo Surf" for short.  The Bold 9000 is pictured below.



22.    In addition to the look of the sculpted keys, the Bold featured several other design elements that have become uniquely associated with BlackBerry and its smartphone products.

23.     For example, the Bold featured the use of curved bars (referred to as "frets") above each row of keys.  Each of the keys in the top three rows is a roughly square shape, and arranged like the keys on a piano, without any significant space or material between them horizontally.  The surface of each key has a sculpted curve on the side closer to the vertical center line.  Further, the bottom row of keys is designed so that, instead of being roughly square in shape, they are roughly rectangular and have curved bottom edges.  Taken together, the bottom row of keys echoes the curvature of the bottom of the device.

24.     The distinctive look of the BlackBerry Bold was designed to reinforce the impression that the Bold 9000 was a high-end mobile device, and to create an emotional appeal that makes the design more approachable than a sea of multiple buttons and keys.

25.     These key design elements of the Ergo Surf keyboard have been used in every BlackBerry flagship device since 2008, including the Tour, Style, Torch, and Bold Touch.  Several of these examples are shown below.

  

26.     More recently, in June 2013, BlackBerry released the Q10, the latest iteration of its wireless, keyboard-based products.  The Q10 incorporates both a modern touch-screen and the

-6-
AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

iconic BlackBerry physical keyboard.  The Q10's physical keyboard continues to incorporate bars above the rows of keys having the distinctive sculpted appearance of the thumb-optimized ergo-surf design that was first introduced with the Bold 9000, as can be seen in the following image.



27.    Each successive iteration of BlackBerry's wireless devices has received industry praise and awards, particularly for its keyboard layout and design.  As CNET noted, "the keyboard is arguably the star of any BlackBerry product."

28.    As a result of its innovative and distinctive keyboard designs, BlackBerry's devices have achieved overwhelming commercial success, and BlackBerry's physical keyboard has become uniquely associated with the BlackBerry name.

29.    BlackBerry's smartphones with physical keyboards have been advertised extensively throughout the United States through virtually every type of media, including television, magazines and other publications, newspapers, and the Internet.  The vast majority of these advertisements focus on the distinctive BlackBerry keyboard design.

30.    BlackBerry's smartphones with physical keyboards have also received significant unsolicited coverage in the media, and reviewers and analysts have praised the BlackBerry keyboard as the standard by which all other such products are judged.  GSMA – the largest and most well known association of mobile operators – recognized BlackBerry's keyboard devices as

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

"chang[ing] the face of corporate communication." Business Insider recognized BlackBerry as "the best at making keyboard phones," calling the Q10 in particular the "best keyboard phone you can buy." Similarly, in praising the BlackBerry Q10's keyboard, the well known New York Times technology columnist David Pogue remarked that "no phone on the market offers a better combination of speed and accuracy for entering text." In 2013, Thomson Reuters named BlackBerry one of the World's Top 100 Most Innovative Organizations, based largely on the number of "important patents [BlackBerry has], mainly for its popular keyboard."

31.     BlackBerry's handheld devices – and their keyboards – have garnered widespread industry acclaim for both their unique design and their performance. BlackBerry and its keyboard products have garnered dozens of industry awards, including the GSMA Chairman's Award, InfoWorld Magazine's Product of the Year Award, PC World's World Class Award, the Network Industry Award for Best New Mobile Communications Product, the BusinessWeek Best Product of the Year award, and PC Magazine's Best of the Year Award.

### BlackBerry's Utility Patents

32.     On December 8, 2009, the USPTO issued U.S. Patent No. 7,629,964 titled "Hand-Held Electronic Device With A Keyboard Optimized For Use With The Thumbs" (hereinafter the "'964 patent"). This patent names Jason Griffin, John Holmes, Mike Lazaridis, Herb Little, and Harry Major, all of Canada, as inventors, and identifies RIM as the assignee. A true and correct copy of the '964 patent is attached hereto as **Exhibit A**.

33.     On April 24, 2012, the USPTO issued U.S. Patent No. 8,162,552 titled "Ramped-Key Keyboard for a Handheld Mobile Communication Device (hereinafter the "'552 patent"). This patent names Roman Rak, Jason Griffin, and Norman Ladouceur, all of Canada, as inventors, and identifies RIM as the assignee. A true and correct copy of the '552 patent is attached hereto as **Exhibit B**.

34.     BlackBerry is the owner of all right, title, and interest in and to the '964 and '552 patents with the full and exclusive right to bring suit to enforce each patent, including the right to recover for past infringement.

### BlackBerry's Design Patent

35.     On July 9, 2013, the USPTO issued U.S. Patent No. D685,775 titled "Handheld Electronic Device" (hereinafter the D'775 patent).  This patent names Joseph Michael Hofer, Todd Andrew Wood, Di Tao, Roman Rak, Anders Fahrendorff, Cortez Corley, Ingve Holmung, and Alison Phillips, all of Canada, as inventors, and identifies RIM as the assignee.  The only portion of the device shown in the D'775 patent that is claimed is the keyboard design set out in solid lines.  A true and correct copy of the D'775 patent is attached hereto as **Exhibit C**.

36.     BlackBerry is the owner of all right, title, and interest in and to the D'775 patent with the full and exclusive right to bring suit to enforce this patent, including the right to recover for past infringement.

**BlackBerry Keyboard Trade Dress**

37.     Through the extensive and consistent advertising, promotion, and publicity of the BlackBerry ergo-surf keyboard devices, BlackBerry has obtained and holds trade dress protection in the design and appearance of those devices.

38.     The following non-functional elements of the design of BlackBerry's keyboard devices comprise some of the product configuration trade dress at issue in this case (the "BlackBerry Keyboard Trade Dress"):

- a keyboard with an overall symmetrical design around the vertical center line, comprising several horizontal dividing bars above rows of sculpted keys, the last of which is rounded on the bottom edge;

- several horizontal bars in contrasting color and finish set above horizontal rows of keys;

- several top rows of roughly square shaped keys having little horizontal space between them;

- a bottom row of roughly rectangular shaped keys having curved bottoms edges and little horizontal space between them;

- keys with planar areas away from the vertical center line of the keyboard and sculpted curves closer to the center line;

- one larger rectangular key in the center of the bottom row having a u-shaped planar area; and

- keys having distinct lettering or graphical icons printed on the surface.

1      39.      These elements of the BlackBerry Keyboard Trade Dress are distinctive and serve

2    to identify BlackBerry as the source of the BlackBerry products.  BlackBerry has made substantial

3    sales in the United States of devices with the BlackBerry Keyboard Trade Dress.  BlackBerry, and

4    its carrier partners, have spent substantial money and resources, to advertise, market, and promote

5    devices with the BlackBerry Keyboard Trade Dress through virtually every type of digital,

6    broadcast, online, and print media in the United States.  Devices with the BlackBerry Keyboard

7    Trade Dress also have received significant unsolicited coverage in digital, broadcast, online, and

8    print media around the United States.  As a result of longstanding and widespread commercial use

9    and success, as well as advertising, publicity, and promotion, the public has come to recognize the

10   shape and design of the BlackBerry Keyboard Trade Dress, which is nonfunctional and distinctive,

11   and to associate it with a single source, namely, BlackBerry.

1

**<u>Typo's And Show Media's Infringing Products</u>**

2

40.     Typo and Show Media have  offered for sale, sold, used, and/or marketed in the

3

United States, and/or imported into the United States, their Typo Keyboard product, which

4

infringes BlackBerry's intellectual property rights in its distinctive keyboard design.  The Typo

5

Keyboard is shown below on its own and with an Apple iPhone 5S inserted into the case.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

 

21

41.     Instead of developing their own keyboard design, Typo and Show Media chose to

22

copy BlackBerry's innovative style and design, including the keyboard layout and the surface

23

shaping of the keys.

24

42.     Numerous industry and analyst reviews have noted Typo's and Show Media's

25

blatant copying, stating:

26

- "The keyboard itself looks like it's been lifted straight from a BlackBerry Q10 (They say imitation is the sincerest form of flattery)…";

27

28

- "The Typo Keyboard That Turns An iPhone Into A BlackBerry";

- "The Bluetooth case turns an Apple handset into a makeshift BlackBerry Q10";

- " iPhone users can now get a similar look and feel with the new Typo Keyboard Case that effectively turns their beloved smartphone into something that resembles the BlackBerry Q10 (and many other BlackBerry devices)";

- "Typo Keyboard Brings Physical BlackBerry Keyboard to iPhone";

- "Typo Keyboard Case: Hands-on with case that turns your iPhone into a BlackBerry"; and

- "The keyboard has the look and feel of a classic BlackBerry, right down to the beveled keys."

43.     Indeed, Typo and Show Media have acknowledged its copying of BlackBerry's iconic keyboard.  On or about December 9, 2013, Typo's co-founder Ryan Seacrest was interviewed by CNN about the Typo Keyboard (http://www.cnn.com/2013/12/06/tech/mobile/ryan-seacrest-iphone-startup/):

> Interviewer:      So it's the best thing about a BlackBerry, within the iPhone.
>
> Ryan Seacrest:     That's kind of how this came to fruition.

44.     Typo and Show Media had many design options for the keyboard in their product which would not embody the same combination of elements of the BlackBerry patents or the BlackBerry Keyboard Trade Dress.   Instead, Typo and Show Media chose to infringe BlackBerry's patents and trade dress through the design and promotion of their Typo Keyboard product, and did so willfully to trade upon the goodwill that BlackBerry has developed in connection with BlackBerry's family of mobile products with physical keyboards.

**Infringement of BlackBerry's Utility Patents**

45.     The Typo Keyboard product infringes the BlackBerry '964 and '552 patents and thereby unlawfully provides Typo and Show Media with unique functionality for their products that was the result of BlackBerry's investment and innovation.

46.     Typo and Show Media have advertised the infringing Typo Keyboard product and has made it available for pre-order on Typo's website at the following page:

http://typokeyboards.myshopify.com/products/typo-iphone-keyboard-case/.

47.     On the Typo website, there are two methods of pre-order available, one through

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

the Typo website and one through online retailer Amazon.  In both methods, payment is charged upon placement of the pre-order, rather than upon shipment of the device.  Shipping is advertised as set to begin in January 2014.

48.     The Typo website further states that "[b]oth the hardware and software for the Typo Keyboard™ were designed and engineered in California & Utah."  And Typo's CEO, who is also Show Media's CEO,  boasted on his LinkedIn account that Typo distributed samples of the product for use to over a hundred testers.

49.     Typo and Show Media have neither sought nor obtained authorization from BlackBerry to incorporate BlackBerry's patented technology into the Typo Keyboard product (or any other product), or to make, use, sell, or offer to sell the infringing Typo Keyboard in the United States (including without limitation as identified above).

50.     Typo and Show Media similarly do not have authorization from BlackBerry to import the infringing Typo Keyboard into the United States.  The Typo website states that the Typo Keyboard product "manufactured and assembled" in China.  Thus, before any domestic pre-orders can be fulfilled, it must first be imported into the United States.

**Infringement of BlackBerry's Design Patent**

51.     As shown in the three-way comparison of the BlackBerry Q10, the D'775 design patent, and the Typo Keyboard product below, Typo and Show Media have  misappropriated BlackBerry's patented design in the accused Typo Keyboard.  An ordinary observer viewing the Typo Keyboard in the purchasing context would be deceived by its similarity to the D'775 patent design, and would be induced to purchase the Typo Keyboard believing it was the same design as BlackBerry's D'775 patent.

FIG.2

### Infringement of BlackBerry's Trade Dress

52.     Typo's and Show Media's Keyboard product embodies a combination of several elements of the BlackBerry Keyboard Trade Dress identified above, namely, a keyboard product configuration with:

- a keyboard with an overall symmetrical design around the vertical center line, comprising several horizontal dividing bars above rows of sculpted keys, the last row of which is rounded on the bottom edge;

- several horizontal bars in contrasting color and finish set above the horizontal rows of keys;

- several top rows of roughly square shaped keys having little horizontal space between them;

- a bottom row of roughly rectangular shaped keys having curved bottoms edges and little horizontal space between them;

- keys with planar areas away from the vertical center line of the keyboard and sculpted curves closer to the center line;

- one larger rectangular key in the center of the bottom row having a u-shaped planar area; and

- keys having distinct lettering or graphical icons printed on the surface.

53.     Typo's and Show Media's keyboard product has caused and is likely to continue to cause confusion, mistake, and deception as to the source of origin of their products and is likely to falsely suggest a sponsorship, connection, or association between Typo, its products, and/or its commercial activities with BlackBerry.  For example, the public is likely to mistakenly believe that BlackBerry makes Typo's keyboard product, that BlackBerry has authorized Typo and Show Media to use its keyboard design, or that there is some kind of relationship between BlackBerry and Typo.  In addition, Typo's keyboard product is likely to dilute the distinctiveness and value of BlackBerry's famous BlackBerry Keyboard Trade Dress.

54.     One of BlackBerry's most significant distinctions in the marketplace is the design of its keyboard, which stands out from all of the other mobile devices on the market. BlackBerry's goodwill among consumers is uniquely tied to its keyboard design.  Typo's and Show Media's copying of BlackBerry's intellectual property rights not only allows Typo and Show Media to trade on benefits from BlackBerry's investment, it threatens to substantially diminish the goodwill that BlackBerry has developed with consumers.

55.      Typo's and Show Media's keyboard products have been marketed as a way to obtain the advantages of BlackBerry's keyboard design for use with an iPhone while supplanting BlackBerry within its customer base.  On information and belief, for example, the co-founders of Typo, Laurence Hallier and Ryan Seacrest, created the Typo Keyboard specifically to replace their BlackBerry devices with a physical keyboard copied from a BlackBerry.  As set forth on Typo's website:

> For several years, many of our friends and colleagues carried two phones: one for typing and correspondence and an iPhone for virtually everything else. One night, we went out to dinner and both had our phones on the table.
>
> Two people, four phones!

(http://typokeyboards.com/about-us).

56.     Typo's and Show Media's infringement of BlackBerry's utility patents and design patent and its infringement and dilution of the BlackBerry Keyboard Trade Dress have damaged

1  and irreparably injured BlackBerry, and, unless Typo and Show Media are preliminarily and

2  permanently enjoined, Typo and Show Media will further damage and irreparably injure

3  BlackBerry and the goodwill it has built.

4      57.      Typo's and Show Media's infringement of BlackBerry's design patent and its

5  infringement and dilution of the BlackBerry Keyboard Trade Dress has irreparably injured the

6  public, and, unless preliminarily and permanently enjoined, will further irreparably injure the

7  public, which has an interest in being free from deception, confusion and/or mistake in the

8  marketplace.

9                          **FIRST CLAIM FOR RELIEF**

10                **(Infringement of United States Patent No. 7,629,964)**

11      58.      BlackBerry incorporates and realleges paragraphs 1 through 55 of this Complaint.

12      59.      Typo and Show Media have  infringed and continue to infringe one or more claims

13  of the '964 Patent by using, selling, and/or offering to sell in the United States, and/or importing

14  into the United States, the Typo Keyboard product in violation of 35 U.S.C. § 271.

15                        **SECOND CLAIM FOR RELIEF**

16                **(Infringement of United States Patent No. 8,162,552)**

17      60.      BlackBerry incorporates and realleges paragraphs 1 through 57 of this Complaint.

18      61.      Typo and Show Media have  infringed and continue to infringe one or more claims

19  of the '552 Patent by using, selling, and/or offering to sell in the United States, and/or importing

20  into the United States, the Typo Keyboard product in violation of 35 U.S.C. § 271.

21                          **THIRD CLAIM FOR RELIEF**

22                **(Infringement of United States Patent No. D685,775)**

23      62.      BlackBerry incorporates and realleges paragraphs 1 through 59 of this Complaint.

24      63.      Typo and Show Media have infringed and continue to infringe one or more claims

25  of the D'775 Patent by using, selling, and/or offering to sell in the United States, and/or importing

26  into the United States, the Typo Keyboard product in violation of 35 U.S.C. § 271.

27

28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

# FOURTH CLAIM FOR RELIEF

## (Trade Dress Infringement)

64.     BlackBerry incorporates and realleges paragraphs 1 through 61 of this Complaint.

65.     BlackBerry is the owner of all right and title to the distinctive BlackBerry Keyboard Trade Dress.  The BlackBerry Keyboard Trade Dress, as embodied in numerous BlackBerry products, including the Bold 9000, Tour, Style, Torch, Bold Touch, and Q10, has acquired secondary meaning, and is not functional.

66.     In addition, based on extensive and consistent advertising, promotion, and sales throughout the United States, the BlackBerry Keyboard Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying BlackBerry as the source of these products.

67.     BlackBerry's extensive advertising, promotion, and sales of products with the distinctive BlackBerry Keyboard Trade Dress have resulted in BlackBerry's acquisition of valuable, legally protected rights in the BlackBerry Keyboard Trade Dress, as well as considerable consumer goodwill.

68.     The Typo Keyboard product has misappropriated the BlackBerry Keyboard Trade Dress by copying a combination of several elements of that trade dress.

69.     Typo's and Show Media's  manufacture, promotion, and distribution of the Typo Keyboard product with a product design that copies a combination of several elements of the BlackBerry Keyboard Trade Dress is likely to cause confusion mistake, or to deceive the consumer as to the affiliation, connection or association of Typo with BlackBerry, or to the origin, sponsorship, or approval by BlackBerry of Typo's goods and services.

70.     Typo's and Show Media's manufacture, promotion, and distribution of the Typo Keyboard product with a product design that copies a combination of several elements of the of the BlackBerry Keyboard Trade Dress enables Typo and Show Media to benefit unfairly from BlackBerry's reputation and success.

71.     Typo's and Show Media's actions constitute false designation of origin in violation of 15 U.S.C. §1125(a).

72.     Typo and Show Media  knew of the BlackBerry Keyboard Trade Dress when it designed its Keyboard product.  Accordingly, Typo's and Show Media's infringement has been and continues to be intentional, willful and without regard to BlackBerry Keyboard Trade Dress.

73.     BlackBerry has been and will continue to be irreparably harmed and damaged by Typo's and Show Media's conduct, and BlackBerry lacks an adequate remedy at law to compensate for this harm and damage.

74.     BlackBerry is informed and believes, and on that basis alleges, that Typo and Show Media have further obtained investment by virtue of its infringement of the BlackBerry Keyboard Trade Dress.

75.     BlackBerry also has sustained damages as a direct and proximate result of Typo's and Show Media's infringement of the BlackBerry Keyboard Trade Dress in an amount to be proven at trial, including Typo's and Show Media's profits and/or gains of any kind resulting from its acts of infringement.

76.     Because Typo's and Show Media's actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FIFTH CLAIM FOR RELIEF

### (Trade Dress Dilution)

77.     BlackBerry incorporates and realleges paragraphs 1 through 74 of this Complaint.

78.     As alleged above, the BlackBerry Keyboard Trade Dress has acquired distinctiveness in the minds of consumers and has become famous.

79.     Typo and Show Media have misappropriated the BlackBerry Keyboard Trade Dress to promote its own infringing products in interstate commerce.

80.     Typo and Show Media have promoted the distinctive and famous BlackBerry Keyboard Trade Dress in a manner that dilutes and is likely to dilute the distinctiveness of the BlackBerry Keyboard Trade Dress by (a) diminishing the public's association of the exclusivity of the BlackBerry Keyboard Trade Dress trade dress with BlackBerry as a company, and (b)

diminishing the status of the BlackBerry Keyboard Trade Dress as a unique identifier of the BlackBerry brand.

81.     Typo's and Show Media's actions constitute dilution in violation of 15 U.S.C. §1125(c).

82.     Typo and Show Media knew of the BlackBerry Keyboard Trade Dress when it designed its Keyboard products.  Accordingly, Typo's and Show Media's acts of dilution have been and continue to be intentional, willful and without regard to the BlackBerry Keyboard Trade Dress.

83.     BlackBerry has been and will continue to be irreparably harmed and damaged by Typo's and Show Media's conduct, and BlackBerry lacks an adequate remedy at law to compensate for this harm and damage.

84.     BlackBerry is informed and believes, and on that basis alleges, that Typo and Show Media have obtained investment by virtue of its dilution of the BlackBerry Keyboard Trade Dress.

85.     BlackBerry also has sustained damages as a direct and proximate result of Typo's and Show Media's infringement of the BlackBerry Keyboard Trade Dress in an amount to be proven at trial, including Typo's profits and/or gains of any kind resulting from its acts of dilution.

86.     Because Typo's and Show Media's actions have been willful, BlackBerry is entitled to enhanced and exemplary damages, including treble its actual damages, to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### SIXTH CLAIM FOR RELIEF

### (Unfair Business Practices - California Business

### and Professions Code § 17200, *et seq.*)

87.     BlackBerry incorporates and realleges paragraphs 1 through 84 of this Complaint.

88.     The acts of Typo and Show Media described above constitute unlawful, unfair, and fraudulent business practices as defined by California Business & Professions Code § 17200, *et seq.*

89.     BlackBerry has valid and protectable rights in the BlackBerry Keyboard Trade Dress.  The BlackBerry Keyboard Trade Dress does not serve any function other than to identify BlackBerry as the source of its wireless handheld products.  The BlackBerry Keyboard Trade Dress is distinctive, and, through BlackBerry's long use, has come to be associated solely with BlackBerry as the source of the products on which it is used.

90.     Typo's and Show Media's use of its infringing trade dress is likely to cause confusion as to the source of Typo's products, and is likely to cause others to be confused or mistaken into believing that that BlackBerry has authorized Typo to use its keyboard design, there is a relationship between Typo and BlackBerry, or that Typo's products are affiliated with or sponsored by BlackBerry.  In addition, Typo's keyboard product is likely to dilute the distinctiveness and value of BlackBerry's famous BlackBerry Keyboard Trade Dress.

91.     The above-described acts and practices by Typo and Show Media are likely to mislead or deceive the general public and therefore constitute fraudulent business practices in violation of California Business & Professions Code §§ 17200, *et seq.*

92.     The above-described acts constitute false designation of origin under  15 U.S.C. § 1125(a), and dilution under 15 U.S.C. § 1125(c), and are therefore unlawful acts in violation of California Business & Professions Code §§ 17200, *et seq.*

93.     Typo and Show Media acted willfully and intentionally in designing its infringing trade dress, with full knowledge of BlackBerry's prior rights in the distinctive BlackBerry Keyboard Trade Dress, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between Typo and BlackBerry or between Typo's products and BlackBerry's products.

94.     The unlawful, unfair, and fraudulent business practices of Typo described above present a continuing threat to the public in that Typo continues to promote its products by wrongfully trading on the goodwill of the BlackBerry Keyboard Trade Dress.

95.     As a direct and proximate result of these acts, Typo and Show Media have received, and will continue to profit from, the strength of the BlackBerry Keyboard Trade Dress.

96.     As a direct and proximate result of Typo's and Show Media's wrongful conduct, BlackBerry has been injured in fact, and such harm will continue unless Typo's and Show Media's acts are enjoined by the Court.  BlackBerry has no adequate remedy at law for Typo's and Show Media's continuing violation of BlackBerry's rights.

97.      Typo and Show Media should be required to restore to BlackBerry any and all profits earned as a result of their unlawful, unfair, and fraudulent business practices, or provide BlackBerry with any other restitutionary relief as the Court deems appropriate.

SEVENTH CLAIM FOR RELIEF

(Unjust Enrichment)

98.     BlackBerry incorporates and realleges paragraphs 1 through 95 of this Complaint.

99.     As a result of the conduct alleged herein, Typo and Show Media have been unjustly enriched to BlackBerry's detriment.  BlackBerry seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Typo's and Show Media's  inequitable activities.

PRAYER FOR RELIEF

WHEREFORE, BlackBerry prays for the following relief:

1.     A judgment that Typo and Show Media have infringed one of more claims of each of the '964, '552, and D'775 patents;

2.     An order and judgment preliminarily and permanently enjoining Typo and Show Media, and their officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, from further acts of infringement of the '964, '552, and D'775 patents;

3.     A judgment awarding BlackBerry all damages adequate to compensate BlackBerry for Typo's and Show Media's infringement of the '964, '552, and D'775 patents, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

4.     A judgment awarding BlackBerry its reasonable attorneys' fees as provided for in 35 U.S.C. § 285 to the extent the Court finds this case exceptional;

5.     A judgment awarding BlackBerry all of Typo's and Show Media's profits as provided for in 35 U.S.C. § 289, including prejudgment interest;

-21-

6.      An order preliminarily and permanently enjoining Typo and Show Media and their officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, from: directly or indirectly infringing the BlackBerry Keyboard Trade Dress, or using any other product design similar to or likely to cause confusion with the BlackBerry Keyboard Trade Dress; using any false designation of origin or false description, including the appearance of its Keyboard product, that can, or is likely to, lead the consuming public, or individual members thereof, to believe that any goods produced, advertised, promoted, marketed, provided, or sold by Typo or Show Media are in any manner associated or connected with BlackBerry, or are advertised, promoted, marketed, sold, licensed, sponsored, approved or authorized by BlackBerry; committing any other unfair business practices directed toward obtaining for themselves the business and customers of BlackBerry; and committing any other unfair business practices directed toward devaluing or diminishing BlackBerry's brand or business;

7.      Actual damages suffered by BlackBerry as a result of Typo's and Show Media's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

8.      Reasonable funds for future corrective advertising;

9.      An accounting of  Typo's and Show Media's profits as provided for in 15 U.S.C. § 1117;

10.     A judgment trebling any damages award as provided for in 15 U.S.C. § 1117;

11.     A judgment awarding BlackBerry its reasonable attorneys' fees as provided for in 15 U.S.C. § 1117 and any applicable state law;

12.     An order pursuant to 15 U.S.C. § 1118 requiring that all materials bearing the infringing BlackBerry Keyboard Trade Dress to be delivered up and destroyed, and requiring Typo and Show Media to withdraw from the market all infringing products and advertising and promotional material displaying the infringing products;

13.     An order directing Typo and Show Media to file with the Court and serve upon BlackBerry's counsel within thirty (30) days after entry of the order of injunction, a report setting

1  forth the manner and form in which Typo and Show Media have complied with the injunction,

2  including the provision relating to destruction and recall of infringing products and materials;

3      14.    Punitive damages pursuant to California Civil Code § 3294;

4      15.    Restitutionary relief against Typo and Show Media and in favor of BlackBerry,

5  including disgorgement of wrongfully obtained profits and any other appropriate relief;

6      16.    Costs of suit and reasonable attorneys' fees; and

7      17.    Such other and further relief to which BlackBerry may show itself to be entitled,

8  including all remedies provided for in 15 U.S.C. § 1117, Cal. Bus. & Prof. Code § 17200, *et seq.,*

9  and under any other applicable law.

10

11  DATED:  December 9, 2014          QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

12

13                        By  /s/ Kevin P. B. Johnson

14                            Kevin P. B. Johnson
                          Attorney for BlackBerry Limited

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1

**JURY DEMAND**

2       Pursuant to Federal Rule of Civil Procedure 38(b), BlackBerry Limited hereby demands

3   trial by jury of all triable issues.

4

5   DATED:  December 9, 2014                    QUINN EMANUEL URQUHART &
                                                SULLIVAN, LLP
6

7                                       By /s/ Kevin P. B. Johnson
                                           Kevin P. B. Johnson
8                                          Attorney for BlackBerry Limited

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL