UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKBERRY LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>TYPO PRODUCTS LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-00023-WHO<br><br>**ORDER GRANTING BLACKBERRY'S RENEWED MOTION FOR CONTEMPT; GRANTING BLACKBERRY'S MOTION TO COMPEL**<br><br>Re: Dkt. No. 125, 126, 145, 146 |

## INTRODUCTION

Plaintiff BlackBerry Limited moves for a finding that defendant Typo Products LLC is in contempt of the preliminary injunction issued in this matter involving allegations of patent and trade dress infringement. Dkt. No. 126. BlackBerry's motion is GRANTED because it established that Typo, after the preliminary injunction took effect, sold enjoined products, provided warranty replacements of the enjoined products, and promoted enjoined products to consumers. Typo is ordered to pay BlackBerry $860,600 in sanctions, plus attorneys' fees and costs incurred in connection with Typo's contempt.

This order also GRANTS BlackBerry's motion to compel depositions and documents. Dkt. No. 146.

## I. BLACKBERRY'S RENEWED MOTION FOR CONTEMPT

### BACKGROUND

On March 28, 2014, I granted plaintiff BlackBerry's motion for a preliminary injunction barring defendant Typo from distributing its add-on keyboard for the iPhone which, BlackBerry alleges, violates BlackBerry's patents. Dkt. No. 39.

The preliminary injunction provided that:

> Upon the posting of a bond by Blackberry, Typo Products LLC and its officers, agents, affiliates, employees, and attorneys, and all those persons acting or attempting to act in concert or participation with them, ARE ENJOINED FROM:

    a) making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing Typo Products's Typo Keyboard Case, which is depicted in BlackBerry's moving papers, and any product that is no more than colorably different from these specified products and embodies any design contained in U.S. Design Patent No. D685,775; and

    b) making, using, offering to sell, or selling within the United States, or importing into the United States, or marketing, promoting, or distributing Typo Products's Typo Keyboard Case, and any product that is no more than colorably different from the specified products and infringes U.S. Patent No. 7,629,964.

Dkt. No. 39 at 24. The preliminary injunction took effect when BlackBerry posted the required bond on April 15, 2014. Dkt. No. 55.

    BlackBerry contends that Typo is in contempt of the preliminary injunction for selling the enjoined keyboards, providing warranty replacements, and promoting the enjoined keyboard. BlackBerry seeks:

1. $2,643,000 in sanctions against Typo, reflecting disgorgement of all money received by or owed to Typo from its violations of the preliminary injunction and trebling of all amounts disgorged;

2. BlackBerry's attorneys' fees and costs incurred in pursuing the contempt and all related discovery; and

3. An order precluding Typo's reliance on an advice of counsel defense and a finding that Typo willfully violated the preliminary injunction.[1]

## LEGAL STANDARD

Civil contempt sanctions may be imposed, upon notice and an opportunity to be heard, "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). A party alleging civil contempt "must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993). "The contempt

---

[1] BlackBerry moves to seal its opening and reply briefs. Dkt. Nos. 125, 145. BlackBerry has filed redacted versions of those briefs on the publically-accessible docket. Dkt. Nos. 126, 145-4. BlackBerry's motions to seal are GRANTED.

need not be willful, and there is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id*. (internal punctuation and quotations omitted).

## DISCUSSION

The preliminary injunction took effect when BlackBerry posted the required bond on April 15, 2014. Dkt. No. 55. After that time, BlackBerry sold 1,908 enjoined keyboards to Chris Yergensen in Las Vegas; sold 16,829 enjoined keyboards to customers outside of the United States; provided 365 warranty replacements of enjoined keyboards; and referred six customers to third parties to buy the enjoined keyboard. As discussed below, this conduct violated the preliminary injunction.

### A. Typo sold 1,908 enjoined keyboards to Chris Yergensen in Las Vegas after the injunction took effect.

Typo's CEO, Laurence Hallier, emailed a copy of the preliminary injunction order to Chris Yergensen shortly after it issued. Hallier and Yergensen are close friends and business associates.[2] They agreed that Typo would transfer around 4,000 keyboards to Yergensen before the injunction took effect, and Yergensen would only pay Typo for the keyboards when Yergensen sold them to third parties. Yergensen depo. at 69-70 [Dkt. No. 125-6]. Yergensen sold approximately 1,900 keyboards, for which he paid Typo approximately $75,000 after the preliminary injunction took effect. *Id*. at 93; Hallier depo. at 124 [Dkt. No. 125-7]. Typo ultimately took back approximately 1,800 unsold keyboards from Yergensen which Yergensen had been unable to sell. Hallier depo. at 118-21.[3]

---

[2] Yergensen testified that he and Hallier have been "very close friends" for over 15 years. Yergensen depo. at 14. Yergensen became in-house counsel at Hallier-owned Show Media in 2001 and was later general counsel for Hallier Properties until 2008. *Id*. at 23. Yergensen is currently listed as General Counsel on Show Media's website. *Id.* at 31. Yergensen prepared the paperwork to set Typo up as a limited liability company and handled Typo's annual reports. Hallier depo. at 22-25.

[3] Typo claims that several hundred of the units transferred to Yergensen are unaccounted for. *See* Dkt. No. 103-2 at 6 (Typo response to interrogatory no. 6).

3

Typo argues that these sales did not violate the preliminary injunction because its "consignment" sales to Yergensen occurred before the injunction took effect and Yergensen's sales to third parties were outside of Typo's control. Typo is wrong. Typo's "consignment" sale to Yergensen before the injunction took effect did not transfer title of the enjoined keyboards from Typo to Yergensen. *See, e.g., Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2169 (2012) ("a consignment of goods for sale does not pass the title at any time, nor does it contemplate that it should be passed") (internal punctuation and citation omitted). Typo did not sell the enjoined keyboards to Yergensen until Yergensen paid Typo for the keyboards, which was after the preliminary injunction took effect. Yergensen depo. at 93; Hallier depo. at 124. Indeed, Typo reclaimed 1,800 keyboards which Yergensen had been unable to sell, confirming that ownership of those keyboards never transferred to Yergensen. Typo's sales of 1,908 keyboards to Yergensen therefore violated the preliminary injunction.

In addition, the record shows that Hallier directed customers to Yergensen to sell the keyboards in Yergensen's possession. On one occasion, Yergensen testified, he received a phone call from a man named Jordan (he did not remember his last name) who wanted to buy the enjoined keyboards. Yergensen depo at 83-84. Yergensen did not know how Jordan got his number. *Id*. at 84. Although Typo claims that it did not provide Yergensen any leads and know any of its buyers, Opp. at 13, one of BlackBerry's attorneys, Todd Briggs, figured out who Jordan was (Jordan Wachtel) and contacted him. Wachtel confirmed that he had received Yergensen's contact information from Hallier. Briggs declared:

> Mr. Wachtel told me that he first met Laurence Hallier and others from Typo during the spring of 2014. He also told me that Mr. Hallier told him he could not purchase Typo 1 products directly from Typo but could purchase Typo 1 products from another individual. Mr. Wachtel remembered Mr. Hallier texting him the contact information for this individual. Mr. Wachtel stated that he did not know this individual before Mr. Hallier provided his contact information. Mr. Wachtel remembered communicating with this individual and then working with Mark Evans to purchase Typo 1 products. Mr. Wachtel stated that he did not know Mr. Evans prior to this.

Briggs Reply Decl. ¶ 4 [Dkt. No. 145-17]. Yergensen testified at his deposition that Evans was his friend and helped with the sales of the keyboards Yergensen purchased from Typo. Yergensen

4

depo. at 81:4-20. At the hearing on the motion for contempt, Typo's counsel did not dispute that Hallier directed Wachtel to Yergensen to buy the enjoined keyboards.

Typo is ordered to disgorge the $75,000 in proceeds it received from its sales to Yergensen in violation of the preliminary injunction.

### B. Typo sold 16,829 enjoined keyboards "within the United States" to foreign customers after the injunction took effect.

Typo sold 16,829 enjoined keyboards to retailers in Canada, Hong Kong, Mexico, the Middle East, Singapore, Indonesia, and the United Kingdom for $748,500 after the injunction went into effect. Arnold Decl., Ex. 4 at Typo00969-972 [Dkt. No. 125-9].

Typo contends that these sales did not violate the preliminary injunction because the keyboards were sold to customers located outside the United States for resale to customers outside the United States; Typo "invoiced the sale to its customers outside the United States"; Typo received payment through foreign banks; and Typo did not meet the foreign customers in the United States (except for iStore, which Typo met in December 2013 (before BlackBerry's complaint was filed). Typo also argues that it "substantially complied" with the injunction because whether these sales constitute sales and offers to sell "within the United States" "calls for a complex factual analysis." Opp. at 9.

I disagree. The preliminary injunction barred Typo from "offering to sell, or selling [the enjoined keyboards] within the United States." Dkt. No. 39 at 24. Nonetheless, Typo took deliberate steps, all within the United States, to offer to sell and sell the enjoined keyboards after the injunction took effect. The enjoined keyboards were located in Las Vegas when the sales were negotiated. Hallier was located in the United States when he negotiated the sales. The invoices were prepared in the United States. The enjoined keyboards were shipped from Las Vegas. Hallier depo. at 99-100, 138-40. Typo received payment for the orders in its Wells Fargo account in Las Vegas. *Id*. at 140. In short, *all* of Typo's conduct related to the sales and offers to sell occurred in the United States.[4] The offers to sell and sales were therefore "within the United

---

[4] I note also that the sales agreements at issue have choice-of-law provisions providing that they are governed by United States law. Reply Ex. 7; Reply Ex. 8; Hallier depo. at 225.

1  States" in violation of the preliminary injunction. *Cf MediaTek Inc. v. Freescale Semiconductor,*
2  *Inc.*, No. 11-cv-5341 YGR, 2014 WL 580836, at *1, 2-4 (N.D. Cal. Feb. 13, 2014) (jury could
3  reasonably find that sales were within the Unites States where sales agreements were formed and
4  executed in the United States, but the product was product was manufactured outside the United
5  States, sold to a manufacturer outside the United States, and incorporated into a product outside
6  the United States).

Typo is ordered to disgorge the $748,500 in proceeds it received from these sales.

### C. Typo provided 365 warranty replacements after the injunction took effect

Typo replaced 365 keyboards under a warranty after the injunction went into effect. Ex. 11 at TYP000618-625 [Dkt. No. 125-16]. In each case, Typo sent an enjoined keyboard to the customer after receiving a defective unit. Hallier depo. at 180:19-181:9. I previously addressed Typo's warranty replacements, stating:

> [Typo's] warranty program does not give it license to provide enjoined keyboards to its customers after the preliminary injunction took effect. *Cf Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) ("If the owner's use infringed, so also did his repair of the top-structure, as by replacing the worn-out fabric component. Where use infringes, repair does also, for it perpetuates the infringing use.")). At oral argument, counsel for Typo stated that Typo misapprehended the relevant law and conceded that the warranty replacements likely violated the preliminary injunction. Counsel argued that the violation was minimal, however, as it involved fewer than 400 replacement keyboards.

Dkt. No. 87 at 6.

Typo is ordered to pay BlackBerry $36,500 for the 365 enjoined keyboards it improperly distributed under its warranty program after the injunction went into effect ($100 per unit).[5]

### D. Typo promoted the enjoined keyboards after the injunction took effect

After the injunction went into effect, Typo received numerous inquiries from customers asking where the Typo device could be purchased. In at least six instances, Typo directed customers to third parties to purchase the enjoined keyboard. *See, e.g.* Ex. 12 at TYPO00347

---

[5] Typo typically sold the keyboard to consumers for approximately $100. *See, e.g.,* Dkt. No. 125-14.

("you can try looking on eBay but please note that we do not have any association with third party sellers and therefor cannot guarantee the product"). This violated the injunction's prohibition on marketing or promoting the enjoined keyboards. Typo is ordered to pay BlackBerry $600 for these violations ($100 per incident).

### E. Typo shipped 6,804 enjoined keyboards to Canada on the same day as the contempt hearing

On August 20, 2014, I heard argument on BlackBerry's motion for order to show cause why Typo should not be held in contempt for violating the preliminary injunction. Dkt. No. 86. That same day, Typo shipped 6,804 unsold units from its inventory in Las Vegas to Canada for storage there. Hallier Depo. 207:4-18, 209:1-7. Hallier explained that this would allow Typo to continue to ship keyboards to its Canadian customers from Canada in the event the Court ruled that "we're not allowed to ship internationally." Hallier Depo. 209:14-23 ("So we thought, you know what? Let's store them in a country where they're selling. And if we're not allowed to ship internationally, if the judge rules against us that we can't ship out of Las Vegas, then we'll ship them out of Canada.").

Typo cannot evade the preliminary injunction by transferring enjoined products out of the United States for sale. Typo is enjoined from taking steps within the United States to sell or offer to sell these keyboards.

### F. Typo's reliance on advice of counsel

BlackBerry contends that "Typo should not be allowed to rely on the advice of counsel to justify its willful and deliberate violations of the injunction and seek a lower sanction while claiming privilege over the full substance of those communications." Mot. at 22. Typo responds that it "is not seeking to justify its actions because counsel advised that those actions were permissible." Opp. at 6. Rather, Typo argues that it "substantially complied with the Injunction because Mr. Hallier's interpretation of the Injunction was reasonable, and because Typo took 'all reasonable steps' to comply with the Injunction which included seeking advice of counsel rather than acting solely on its own interpretation of the terms." *Id*.

Typo's contempt of the injunction is not ameliorated by Typo's assertion that it sought the

7

1  advice of counsel. There is therefore no need for an order precluding Typo from relying on advice
2  of counsel.

### G. Attorneys' fees

BlackBerry is awarded its attorneys' fees and costs incurred in bringing both of its contempt motions and in conducting special contempt discovery.[6] BlackBerry shall provide the Court and Typo an accounting of its fees and costs by February 24, 2015 with sufficient detail, including detailed time records, to support its request. Typo may file an opposition to the amounts claimed on or before March 10, 2015, and Blackberry may reply by March 17, 2015. The Court is unlikely to hold a hearing, and will render its award in due course.

### H. Award of Sanctions

Typo argues that BlackBerry has not shown that it has lost any sales as a result of Typo's conduct and that an award of sanctions to BlackBerry would constitute an undeserved windfall. I agree that the extent to which BlackBerry has been damaged is uncertain. But Typo's not so clever attempts to evade the Court's preliminary injunction is quite certain, and it is my obligation and intent to vindicate respect for and compliance with the Court's orders. The amount of sanctions awarded is only a third of what BlackBerry sought and is directly tied to additional revenue that Typo could have expected from its illegal conduct. Under the circumstances, it is a just and appropriate award.

## II. BLACKBERRY'S MOTION TO COMPEL

BlackBerry filed a motion to compel depositions, production of documents, production of allegedly privileged information, and for related attorneys' fees and expenses.[7] Dkt. No. 146. I heard argument regarding the motion to compel on January 21, 2014, along with the motion for contempt. The parties resolved several of the disputes during the briefing on the motion, but the issues addressed below remained:

---

[6] I previously granted BlackBerry's motion for an order to show cause why BlackBerry should not be held in contempt and for leave to take discovery regarding Typo's contempt. Dkt. No. 87.
[7] BlackBerry filed motions to seal portions of its briefing in connection with the motion to compel. Dkt. Nos. 146, 153. Redacted versions of the briefs have been filed on the publically-accessible docket. Dkt. Nos. 146-4, 153-3. BlackBerry's motions to seal are GRANTED.

8

### A. Document production

BlackBerry seeks production of a document entitled "Blackberry-Typo-Motorola Patent Review RPH.docx." Typo is ordered to produce the document or explain why it cannot be produced. BlackBerry also seeks prosecution history for Typo's design patent application. Typo states that no prosecution history exists because the application has not been examined. That may be true, but Typo is ordered to produce the material it filed with the PTO.

### B. Document searches

BlackBerry asserts that Typo's searches for relevant documents are insufficient because, for example, Goodrich did not search for emails where he was cc'd (rather than emails "to" or "from" him) and Hyde did not search for the term Q10 (BlackBerry's new phone) or produce emails between him and iChia (manufacturer of the Typo 1 keyboard) that were exchanged just weeks after BlackBerry publically announced its Q10 production on January 30, 2013 and included design drawings. I agree that Typo's searches are insufficient. Typo is ordered to conduct searches that address these deficiencies.

### C. Renewed depositions

BlackBerry seeks to continue depositions of Hallier, Goodrich and Hyde after Typo produced relevant documents after their depositions. Typo has agreed to make Hallier available, but BlackBerry contends that Hallier does not have knowledge of the late-produced documents at issue. Typo is ordered to make Hyde, Goodrich, and Hallier available for continued depositions so that BlackBerry can adequately question the appropriate witnesses about relevant documents produced after the depositions.

### D. Privilege log

BlackBerry asserts that several documents on Typo's privilege log are not privileged (or that it waived privilege). Typo shall lodge those documents with the Court within 7 days of this order so the Court can determine whether those documents are properly withheld as privileged.

Typo contends that BlackBerry lost documents associated with the '964 patent, but will not disclose the circumstances of the loss or specific records or categories of documents that were lost. Within 7 days of this order, BlackBerry shall provide Typo a statement describing the

9

circumstances of the loss and what categories of documents were lost.

### E. Typo's pre-suit patent investigation

If Typo intends to use a pre-suit investigation by counsel as a defense in this matter, it must produce the documents related to that investigation. If Typo does not intend to use the material, then it can assert the attorney-client privilege if otherwise appropriate.

### F. Attorneys' fees

I decline BlackBerry's request for attorneys' fees and costs for the motion to compel and for the renewed depositions of Hallier, Goodrich and Hyde. Recognizing the disparity in resources between BlackBerry and Typo, that Typo has been responding to considerable briefing and discovery requests since new counsel substituted in, and in light of my order granting BlackBerry's motion for contempt, sanctioning Typo a considerable sum, and awarding fees on that motion as well, I find that awarding additional attorneys' fees to BlackBerry for litigating the motion to compel is not warranted.

## CONCLUSION

BlackBerry's renewed motion for contempt is GRANTED. Dkt. No. 126. Within 45 days of this order, Typo shall pay BlackBerry $860,600 as a sanction for violating the preliminary injunction order. Typo, and its agents or anyone acting in concert with Typo, must cease and desist from any further violations of the preliminary injunction. Pursuant to the schedule described in Section I.G of this order, BlackBerry shall submit documentation to the Court to show the costs and attorneys' fees incurred in connection with Typo's contempt so that the Court can order costs and fees to be paid by Typo.

BlackBerry's motion to compel is GRANTED. Dkt. No. 146. Its request for fees on the motion to compel is DENIED.

BlackBerry's motions to seal are GRANTED. Dkt. Nos. 125, 145, 146, 153.

**IT IS SO ORDERED**.

Dated: February 4, 2015

_____
WILLIAM H. ORRICK
United States District Judge